**In the Matter of the RECEIVERSHIP OF Alice J. HOLLINGSWORTH,**
**Appellant,**

**and**

**Dean J. Hollingsworth.**

No. 84–913.

Supreme Court of Iowa.

April 16, 1986.

Michael H. Johnson, Ankeny, for appellant.

Richard C. Turner, U.S. Atty., and Robert C. Dopf, Asst. U.S. Atty., for appellee U.S.

Considered by REYNOLDSON, C.J., and UHLENHOPP, McGIVERIN, CARTER, and WOLLE, JJ.

UHLENHOPP, Justice.

This appeal involves the priority of the United States government provided by section 3713 of title 31, United States Code (1982).

In 1981 the marriage of Dean L. and Alice J. Hollingsworth was dissolved. The two individuals had considerable property and debt, including unpaid income taxes. In connection with the dissolution, they sought and obtained a judicial receivership for conversion of all their assets into cash and payment of all claims; we find as did the trial court that claims included the unpaid income taxes of both of them. Alice had contributed $8500 to the marriage from an inheritance and previous alimony, and after payment of all claims she was to receive that amount and the balance held by the receiver was to be divided equally between Dean and her. Dean and Alice assigned their property to the receiver in accordance with their plan. Evidently they did not foresee the extent of the income tax liabilities with interest and penalties.

The clause in question in the dissolution decree stated:

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Petitioner Alice Hollingsworth, and the Respondent, Dean L. Hollingsworth, shall convey over and unto Earl Freel of the Altoona State Bank, Altoona, Iowa all of the real estate owned by the parties hereto and all of the farm equipment owned by the parties hereto, all accounts payable of the parties hereto through the date of January 8, 1981 and all of the accounts receivable of the parties hereto through the date of January 8, 1981. The same to be conveyed to Earl Freel as a receiver in a separate action to be prepared and filed of record in the Polk County District Court.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the receiver upon liquidation of all assets of the parties hereto that come into his hands as receiver, shall first pay all bills of the parties hereto owed through the date of January 8, 1981. Secondly, that off the top, Eight Thousand Five Hundred Dollars ($8,500.00) shall be paid to the Petitioner representing the inheritance, alimony of settlement and alimony that she received during this marriage from a previous husband. The balance of said assets, after the payment of all debts and payment to the Petitioner, Alice Hollingsworth, as stated above shall be divided 50 percent to the Petitioner and 50 percent to the Respondent.

The receiver gave notice to creditors, received numerous claims, and proceeded with liquidation. Dean and Alice were under audit at the time for income taxes of 1978, 1979, and 1980, and the Internal Revenue Service was seeking requisite information to compute the tax liability.

Alice filed a claim in the receivership for $8500 (specified in the dissolution decree), for $7183.72 she alleged she advanced to preserve property in the receivership, for $403.10 as expenses in conferring regarding tax liabilities, for $1601.90 allegedly expended to protect assets of the marriage, and for $310 as attorney fees in the marriage dissolution.

After several intermediate reports and orders including an order allowing Alice's claim, the receivership came down to the final report and hearing. Without consideration of unpaid income taxes, the fund created by liquidation was insufficient to pay all claims in full. The receiver recommended payment of expenses of the receivership itself and pro rata payment of claims which had been allowed.

The Internal Revenue Service evidently learned of this final proceeding, and on the morning of the day of hearing it filed claims for a large estimated sum as Dean's unpaid income taxes and a small sum as Alice's taxes, in combination far in excess of the fund in the receiver's hands. The court first ordered that the receiver's recommendation be adopted but, on learning of the tax claims, made an addendum to its order suspending the order pending resolution within the receivership of the tax claims.

Subsequently the matter of the receivership again came before the court and, after hearing, the court allowed the tax claims, gave them priority subject only to expenses of the receivership itself, and disallowed all of Alice's claim except the item of $8500 in

the dissolution decree. The receivership expenses and the income taxes would, however, more than exhaust the fund.

Alice appealed. In this court she asserts three propositions: (1) the tax claims do not have priority over her claim; (2) the tax claim against Dean does not extend to her half of the receivership fund; and (3) her claim has first priority as a part of the receivership expenses. The first proposition presents a legal question, while the other two propositions are largely factual. We review de novo. *See* 66 Am.Jur.2d *Receivers* § 345 (1973); 75 C.J.S. *Receivers* § 3 (1952).

I. *Priority of federal tax claims.* The relevant portion of our receivership statute provides in section 680.7(1) of the Iowa Code of 1983:

When the property of any person, partnership, company, or corporation has been placed in the hands of a receiver for distribution, after the payment of all costs the following claims shall be entitled to priority of payment in the order named:

1. Taxes or other debts entitled to preference under the laws of the United States.

The relevant portion of the pertinent federal statute provides in section 3713, title 31, United States Code (1982):

A claim of the United States Government shall be paid first when—

(A) a person indebted to the Government is insolvent and—

(i) the debtor without enough property to pay all debts makes a voluntary assignment of property. . . .

Dean and Alice were "indebted to the government", they were "insolvent", they were "without enough property to pay all debts", and they made "a voluntary assignment of property". Prima facie, the government's tax claims were entitled to priority. Federal income taxes are "debts" for purposes of the section. *Viles v. Commissioner of Internal Revenue*, 233 F.2d 376, 379 (6th Cir.1956).

Alice argues however, that an exception to section 3713 applies: the exception for the choate lien. *United States v. Bond*, 279 F.2d 837, 841 (4th Cir.), *cert. denied* 364 U.S. 895, 81 S.Ct. 220, 5 L.Ed.2d 189 (1960). Perhaps the plainest case under the exception is a valid mortgage on specific property in effect before the tax claim arose. *Southern Railway v. United States*, 306 F.2d 119, 126 (5th Cir.1962).

The exception applies, however, only if the lien is definite in specified respects, as explained in the cases of *In re Estate of Lane*, 244 Iowa 1076, 1079–80, 59 N.W.2d 593, 595 (1953), and *Evans v. Stewart*, 245 Iowa 1268, 1273, 66 N.W.2d 442, 445 (1954) ("These are: (1) The identity of the lienor; (2) The amount of the lien; (3) The property to which it attaches."). *See Creditors Exchange Service, Inc. v. United States*, 277 F.Supp. 885 (S.D.Tex.1967). Alice argues that she had a lien on the property in the receivership which meets the test: her identity was known, the amount of her claim was liquidated by prior order, and the property to which the lien attached consisted of the assets in the receiver's hands.

The problem lies in the threshold step of whether Alice had a lien on the assets in the receiver's hands. Alice contends that she had an equitable lien on those assets. This court has stated, however, that "a lien may be created only by contract . . . or by some statute or fixed rule of law; it cannot be created by the court merely from a sense of justice." *In re Estate of Frentress*, 249 Iowa 783, 790, 89 N.W.2d 367, 370 (1958) (quoting 53 C.J.S. *Liens*, § 2 (1948)). We have no contract or statutory lien here, and equitable liens arise only in particular circumstances such as unjust enrichment occurring under facts entitling the plaintiff to a hold on specific property as distinguished from an in personam claim. An equitable lien is then a remedial alternate to a constructive trust. "A court of equity may give restitution to the plaintiff and prevent the unjust enrichment of the defendant not only by imposing a constructive trust and compelling the surrender to the plaintiff of property held by the defendant (see § 160), but also by imposing

an equitable lien upon the property in favor of the plaintiff." Restatement of Restitution § 161, Comment *a* (1937). The American Law Institute furnishes the illustration of an embezzlement of $9000 of a principal's money by an agent. The agent invests the money in securities which decline in value. The principal may in equity obtain a lien on the securities plus a personal judgment against the agent for the deficiency. Restatement (Second) of Restitution § 30, Illustration 4 (Tent. Draft No. 2, 1984).

■ We pass by the question of whether Alice had a "choate" lien. We do not believe she could have obtained a lien at all in a court of equity. We have no conduct here by the receiver or the government which could entitle Alice to a lien on the fund held by the receiver. Alice and Dean assigned their property for the proper purpose of liquidation to pay creditors including the government. No impropriety by anyone was involved, no basis for restitution exists, and the whole foundation for liability and a lien is wanting. If an assignor who transfers his property to a receiver for creditors could have a prior lien for his own claims, the very purpose of section 3713 would be undermined. We reject Alice's contention that she comes within the choate lien exception.

■ II. *Extent of government's priority.* Dean and Alice jointly owned their property. For 1978, 1979, and 1980 they filed separate income tax returns, and the Internal Revenue Service assessed income taxes against them separately. The government initially took the position that since Dean and Alice filed separate returns and owned the property jointly, the income taxes of Dean would only be payable out of his half of the receivership assets and the taxes of Alice would only be payable out of her half.

The trial court found on the record, however, that Dean and Alice placed all their property in receivership for payment of the debts of each and both of them including taxes. In view of that finding the government took the position that the taxes of both of them are payable out of all assets in the receivership, with the priority given by section 3713.

Alice insists that the receivership assets should be separated in accordance with the way the title to the properties was previously held. Her contention turns on a fact question. If she and Dean had assigned their property to the receiver with Dean's half to be chargeable with his debts and Alice's half to be chargeable with her debts, the government would not have a valid claim at all against Alice's half for Dean's taxes. But we agree with the trial court that this is not what happened. The trial court correctly found that all of the property was to be subject to all of the debts. We thus reject Alice's proposition that her half of the receivership assets is not chargeable with Dean's taxes and is not subject to the government's priority.

■ III. *Alice's claims as receivership expense.* The government's priority is subject to proper receivership expenses. *Abrams v. United States,* 274 F.2d 8, 12 (8th Cir.1960). Alice contends that her claim is made up of items for the preservation of family assets and should have priority over the government's claims. This proposition again is largely factual. We will assume arguendo that expenses for preserving assets would constitute receivership expenses payable first.

■ One part of Alice's claim is for $8500 which she was to receive under the dissolution decree. This item, however, was expressly made payable *after* the debts were paid. It would thus be behind the government's claims and the other claims in any event.

■ Another part of the claim is for items which definitely were not for preservation of assets. At most, this part would be a general claim.

A final part of the claim relates to items which the trial court found were not proved to be for preservation of assets during the receivership. Upon consideration of the

record we agree with the trial court's finding.

Moreover, none of the items were proven to have been performed or incurred with the approval of the receivership court or even of the receiver. At best, Alice's claims are collectible out of the receivership as general claims except for the item of $8500, which is behind the general claims. As the receiver's fees and expenses and the government's taxes will more than consume all the assets, nothing will remain with which to pay to Alice.

We thus uphold the judgment.

AFFIRMED.