John Richard **KILLIAN** and Jan B. Killian, Plaintiffs,

v.

**IOWA DISTRICT COURT FOR LINN COUNTY, Defendant.**

No. 88–1651.

Supreme Court of Iowa.

March 21, 1990.

Patrick M. Roby, Richard S. Fry, and Diane Kutzko of Shuttleworth & Ingersoll, P.C., Cedar Rapids, for the trustee bank, on behalf of defendant district court.

James R. Snyder, Iris E. Muchmore, and James A. Gerk of Simmons, Perrine, Albright & Ellwood, Cedar Rapids, for trustee Hess, on behalf of defendant district court.

John H. Carlin of Carlin, Hellstrom & Bittner, Davenport, for defendant R. Richard Bittner.

Considered by HARRIS, P.J., and SCHULTZ, LAVORATO, SNELL, and ANDREASEN, JJ.

HARRIS, Justice.

We granted certiorari to consider this challenge to a trial court ruling which disqualified an attorney from further participation in probate litigation. The court reasoned that the attorney's representation of a trust beneficiary conflicted with his representation of another beneficiary. We annul the writ.

The case revolves around the relationship between attorney Tom Riley and his clients Joan Killian Hunter (Joan) and John Richard Killian (John).[1] Joan and John were sister and brother and beneficiaries of the Anne Killian trust, an inter vivos trust created by their mother.

In 1983 Joan filed suit in federal court against the Merchants National Bank and Russell Hess, then co-trustees of the trust, alleging mismanagement and breach of fiduciary duty. Tom Riley represented Joan in that action. After extensive discovery the parties agreed upon a settlement. A settlement memorandum was signed by Joan, Riley, Hess and others.

John became implicated in the settlement at the insistence of the Merchants National Bank. The bank would settle with Joan only if there were to be no further litigation involving the Anne Killian trust. Because John obviously was the only other

Tom Riley of the Tom Riley Law Firm, P.C., Cedar Rapids, for plaintiffs.

---

1. John Killian died June 11, 1988. His wife, the other plaintiff, has been appointed administra- tor of his estate.

potential litigant the trust filed a report of its doings, including the settlement with Joan, and had the matter set for hearing in probate court. John was given notice.

Joan's settlement provided that, if the trust report were not approved, the settlement was voidable at the bank's option. The report was approved by an order entered April 30, 1987. The settlement agreement contained a provision (paragraph eight)[2] which provides for confidentiality. It also stated that the agreement did not "bar or otherwise limit" the representation of others by Riley. Within a few days of the settlement Riley was retained by John Killian, and Jan his wife, to bring another action against the same defendants, also arising out of the bank's administration of the Killian trust. By letter dated July 30, 1987, Riley advised Thomas Collins, attorney for the Merchants National Bank, that he was representing John and Jan Killian for the purpose of bringing the claim. The claim was similar to the one earlier asserted on behalf of Joan: breach of fiduciary duty and mismanagement of the trust.

Attorney Riley filed the suit for John and Jan in September of 1987. He also filed a petition to vacate (as to John) the probate court's order of April 30, 1987, approving Joan's settlement. This was of course a necessary condition for proceeding with John's suit against the bank but raises the spector of the bank exercising its option to void its settlement with Joan. Riley remains Joan's attorney of record in the trust and represents her in an unrelated probate matter in Linn County.

The bank later filed a motion to disqualify Riley from representing John. The motion was supported by a number of documents, including a copy of a letter from Joan to attorney Riley, strongly protesting his representation of John and Jan, especially in view of her fear that his representation of his new clients would "prejudice" her settlement agreement.

Attorney Riley, joined by his new clients, vigorously resisted the effort to disqualify him. He sincerely contends that the effort—the motion to disqualify was filed several months after the bank's lawyers knew Riley had begun work on the case—is merely tactical and not prompted as a matter of professional ethics. They suggest that the effort is an unfair attempt to deprive the new plaintiffs of effective and well-informed counsel. Riley points out that the money for Joan's settlement has been paid over and the matter closed. He insists that any attempt to disturb Joan's settlement is certain to fail.

■ I. We seem never to have established our scope of review in attorney disqualification matters. Authorities elsewhere make it clear that a motion to disqualify an attorney is addressed to the discretion of the trial court and that a court's ruling on the motion will not be disturbed in the absence of abuse. *Grahams Serv. Inc. v. Teamsters Local 975*, 700 F.2d 420, 423 (8th Cir.1982); *Cheng v. GAF Corp.*, 631 F.2d 1052, 1055 (2d Cir. 1980); *Central Milk Producers Coop. v. Sentry Food Stores*, 573 F.2d 988, 991 (8th Cir.1978). We agree and think trial court discretion should be especially broad when a disqualification motion arises during trial, or when trial is imminent, because substitution of counsel will immediately impact on case flow management. The trial court

---

**2.** Paragraph eight provides:

8. All terms and provisions of this settlement shall remain confidential and the courts above referred to will be asked by all parties to seal the settlement documents. Neither the parties, nor their attorneys, nor Donald E. Snelling, nor anyone under their control, shall disclose to any person any facts or circumstances related directly or indirectly to the above referred to action, or any further action that may have been contemplated or considered by the plaintiffs, nor use any such information in any way that might be detri-

mental to the plaintiffs or the defendants or their officers, directors, agents, or employees, past or present. However, nothing in this settlement shall be construed to bar or otherwise limit plaintiffs' attorneys from representing other persons in actions against the defendants even though such other persons' complaints be similar in nature to the plaintiffs' herein. When asked about this matter the response shall be limited—"the matter has been resolved to the satisfaction to all parties."

shall find the facts surrounding the disqualification motion and our review of those facts is on error. Attorney disqualification matters are ancillary to the main case whether the main case is at law, in equity, or is a special proceeding. Hence the trial court's factual findings in disqualification cases will not be disturbed on appeal if they are supported by substantial evidence.

II. Attorney disqualification challenges derive from ethical principles outlined in the code of professional responsibility for lawyers, especially canon 4 (preservation of confidences and secrets of a client), canon 5 (lawyer must exercise independent professional judgment on behalf of client), canon 7 (zealous representation within the bounds of the law), and canon 9 (avoidance of even the appearance of impropriety). Central to the present dispute is disciplinary rule 5–105,[3] which prohibits an attorney from representing interests which conflict.

■ The letter written by Joan to attorney Riley specifically sets out her objections to his representation of John. In the letter she stated: "I believe that your first obligation is to me. My position is that it is your obligation to insure that nothing prejudices my settlement agreement." Even though the settlement agreement did not "bar or otherwise limit" Riley from representing others it is clear that Joan believed she could withhold her consent and attempted to prevent him from representing interests adverse to her.

We have stated:

Canon 5 is at once important and crystal clear: in the absence of client consent after full disclosure, a lawyer cannot represent a client whose business interests conflict with the lawyer's own. Neither

can a lawyer represent clients whose interests conflict with each other. Indeed, any persons seeking legal counsel can expect unfettered independence of professional judgment of a lawyer whose loyalty to that person is total.

*Committee on Professional Ethics v. Oehler*, 350 N.W.2d 195, 198–99 (Iowa 1984) (citations omitted). The heart of the matter in dispute involves attorney Riley's attempt to set aside the April 30, 1987, order settling Joan's case. Setting aside the order will, at the very least, place Joan in a position of uncertainty with respect to her settlement. Even under the plaintiffs' analysis of the situation it is likely that Joan would need representation to determine if indeed the settlement agreement is binding. On this record Riley is the attorney to whom she would look for advice.

The plaintiffs have suggested that Joan preserve her interests by intervening or by suing attorney Riley if any harm occurs. This suggestion further reveals that attorney Riley is in a potential conflict with Joan.

Riley contends that he has no information gained in confidence from Joan which he could use on behalf of John. He states he is informed in the matter because of what he learned from others, largely through discovery in the federal case. There is authority for the proposition that an attorney cannot represent someone whose interests are adverse even if *no knowledge* was obtained which could operate to the client's disadvantage. *United States v. Trafficante*, 328 F.2d 117, 120 (5th Cir.1964); *Marketti v. Fitzsimmons*, 373 F.Supp. 637, 641 (W.D.Wisc.1974). *See* annotation 52 A.L.R.2d 1253 § 4[c] (1957).

---

**3.** Disciplinary rule 5–105 states:

. . . .

(B) A lawyer shall decline proffered employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment except to the extent permitted under DR 5–105(D).

(C) A lawyer shall not continue multiple employment if the exercise of his independent professional judgment in behalf of a client

will be or is likely to be adversely affected by his representation of another client, except to the extent permitted under DR 5–105(D).

(D) In the situations covered by DR 5–105(B) and (C), a lawyer may represent multiple clients if it is obvious that he can adequately represent the interests of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each.

More significant is whether the two cases are substantially related. If so it is assumed the attorney may have obtained relevant information related to the subsequent litigation. *Government of India v. Cook Indus., Inc.*, 569 F.2d 737 (2d Cir. 1978) (attorney was disqualified from representing client in an action against former client where involvement was such that he was likely to have come across privileged information). Because ethical rules are implicated a simple consent by a client will not overcome disqualification of an attorney who could later use information against the former client who supplied it. *Westinghouse Elec. Corp. v. Gulf Oil Corp.*, 588 F.2d 221, 228 (7th Cir.1978).

Attorney Riley has placed himself in a situation which creates a potential conflict. A potential conflict is enough to warrant disqualification. *Westinghouse*, 588 F.2d at 224.

We are mindful that a motion to disqualify can be misused. We note and approve the following:

> We approach our task as a reviewing court in this case conscious of our responsibility to preserve a balance, delicate though it may be, between an individual's right to his own freely chosen counsel and the need to maintain the highest ethical standards of professional responsibility. This balance is essential if the public's trust in the integrity of the bar is to be preserved. Moreover, we are mindful that ethical problems cannot be resolved in a vacuum.

*Emle Indus., Inc. v. Patentex, Inc.*, 478 F.2d 562, 564–65 (2d Cir.1973). The careful ruling of the trial court reveals that it was mindful of this delicate balance. There was no abuse of discretion in ordering disqualification.

WRIT ANNULLED.