Laddie NACHAZEL and Linda
Nachazel, Appellees,

v.

MIRA CO., MFG., Defendant,

and

Miracle Recreation Equipment
Company, Appellant,

and

Ahrens Agricultural Industries
Company, Cross–Appellee,

and

C.W. Ahrens, Nancy L. Ahrens and Brenton National Bank of Des Moines, Co-executors of the Estate of Paul W. Ahrens, and Randy Juhl, Appellants.

No. 89–1444.

Supreme Court of Iowa.

Feb. 20, 1991.

Kenneth L. Keith and Lloyd E. Keith of Keith, Orsborn, Bauerle, Milani & Neary, Ottumwa, for appellants and cross-appellee.

John D. Hunter and Jill Thompson Hansen of Brown, Winick, Graves, Donnelly, Baskerville & Schoenebaum, Des Moines, for appellees.

Considered by HARRIS, P.J., and LARSON, SCHULTZ, CARTER and LAVORATO, JJ.

SCHULTZ, Justice.

The issues on this appeal arise out of the plaintiffs', Laddie and Linda Nachazel (Nachazels), attempt to collect a judgment of $48,462 plus interest awarded against Mira Co., Manufacturing (Mira). *See Nachazel v. Miraco Mfg.*, 432 N.W.2d 158 (Iowa 1988). After plaintiffs' execution against Mira was returned unsatisfied, plaintiffs commenced this action against several defendants in an attempt to satisfy their judgment.

Plaintiffs sued two corporations, Miracle Recreation Equipment Co. (Miracle) and Ahrens Agricultural Industries Co. (Ahrens Co.). Miracle owns all of Mira's stock. Ahrens Co. manufactures and sells products formerly sold by Mira. Plaintiffs also sued three individuals, C.W. Ahrens, Paul W. Ahrens, and Randy Juhl, who were officers and directors of both Mira and Miracle. Paul W. Ahrens is now deceased and his estate is substituted as a party to this appeal. Mira was also a defendant to the present action, however, no judgment was entered against it.

The trial court entered judgment against the three individuals and Miracle. It dismissed the action against Ahrens Co. We affirm the judgment against Miracle as modified. We reverse the judgment against the individuals and the dismissal of the action against Ahrens Co.

Miracle manufactures and sells recreational equipment. In December 1977 it entered the agricultural market and incorporated Mira. Miracle referred to its agricultural division in its minutes from a meeting of Miracle's Board of Directors; however, Mira was only a part of Miracle's agricultural division. Mira sold and warranted the agricultural products but Miracle manufactured them.

Mira's operation as a separate entity was quite limited. Mira's office was located in Miracle's headquarters but did not maintain a separate telephone, checking account, or accounting department. Mira did not file separate tax returns; its taxable income was included in Miracle's consolidated tax return. Mira did have two employees but they were on Miracle's payroll. Miracle received all cash receipts, paid all bills, and provided all of the accounting services for Mira. Miracle did maintain a ledger showing the relationship of Mira's and Miracle's financial status.

Late in 1983, changes occurred within Miracle's agricultural division. Problems had developed in the manufacture, sale, delivery, and use of Mirahuts which resulted in claims being filed against Mira and Miracle. Defendant C.W. Ahrens planned to retire as Miracle's Director and Chair-

man of the Board in late 1983. The man chosen to succeed Ahrens did not have faith in the profitability of the agricultural line of products and Miracle decided to remove itself from the agricultural market. However, Ahrens believed that the agricultural lines had merit. On November 10, 1983, Miracle's Board of Directors decided to sell the assets of Mira to C.W. Ahrens and empowered Miracle's executive committee to enter a contract of sale with Ahrens.

In December 1983, Ahrens retired from Miracle and incorporated Ahrens Co., which was formed to continue the business of Miracle's former agricultural division. Mira and Ahrens Co. entered a contract for the sale of Mira's assets, which included some vehicles (ten trucks), accounts receivable, and leases. Later, the vehicles were valued at $82,339 and the receivables and leases at $166,745. Also, Miracle transferred its tooling equipment and inventory by the peculiar action of a bill of sale from Mira to Ahrens Co. Miracle received the entire proceeds from the sale of these assets, but Mira's ledger account reflected a credit for the sale.

Mira ceased to do business in 1983. In 1985, the Secretary of State issued a certificate of cancellation to Mira for failure to file a 1985 annual corporation report. Meanwhile, Miracle settled other claims against Mira and provided for Mira's defense in plaintiffs' earlier suit, which was tried and appealed in 1987 and 1988.

Plaintiffs' petition contained eight counts alleging several theories of recovery against the various defendants. The event common to all theories advanced by plaintiffs was the transfer of assets in 1983 and early 1984 between Mira, Miracle, and Ahrens Co. Following trial, the court awarded plaintiffs a judgment against the three individual defendants for $48,462 with interest, and a judgment against Miracle to the extent of the value of the assets transferred from Mira to Miracle. It found against plaintiffs on their claims against Ahrens Co.

On appeal, the individual defendants and Miracle challenge the trial court's separate determination of liability against them. They also claim that the trial court erred when it denied a motion to compel the withdrawal of plaintiffs' attorneys. Plaintiffs cross-appeal, challenging the amount of the award against Miracle and the court's dismissal of its claims against Ahrens Co. We discuss the various issues separately.

I. *Attorney disqualification.* On April 20, 1989, defendants moved to compel plaintiffs' attorneys to withdraw from their representation of plaintiffs because of "receipt of information." The trial court denied defendants' motion. We affirm the trial court's ruling.

Defendants' motion to disqualify plaintiffs' attorneys arises out of the following factual circumstances. During the 1970s, attorney James R. Swanger began doing legal work for Miracle in Grinnell, Iowa. This work involved labor and employment relations and continued periodically until June 29, 1987, when Swanger joined the firm of Brown, Winick, Graves, Donnelly, Baskerville and Schoenebaum (Brown firm). The Brown firm began representing plaintiffs immediately prior to November 28, 1983, when plaintiffs commenced their initial action against Mira.

At the time Swanger joined the Brown firm on June 29, 1987, he was not doing any work for Miracle. Soon thereafter, at Miracle's request, Swanger reviewed Miracle's collective bargaining agreement with the United Auto Workers. Swanger had negotiated this agreement for Miracle in the early 1980s. Swanger performed approximately two hours of legal work on this labor matter for Miracle. All of this work was done in the fall of 1988 by telephone conversations with Ahrens and other Miracle representatives. The subject of plaintiffs' lawsuit was never raised during these phone conversations. Defendants contend that these contacts disqualify the Brown firm in this action.

■ Recently, we established standards to apply in attorney disqualification cases. *Richers v. Marsh & McLennan Group Assocs.,* 459 N.W.2d 478 (Iowa 1990); *Killian v. Iowa District Court,* 452 N.W.2d 426

(Iowa 1990). Our scope of review is for abuse of discretion. *Richers*, 459 N.W.2d at 481; *Killian*, 452 N.W.2d at 428. In *Richers* and *Killian* we adopted the substantial relationship test to determine when a law firm must withdraw from a case when one of its lawyers represented the opposing party in a different matter. *Richers*, 459 N.W.2d at 481; *Killian*, 452 N.W.2d at 430. In this case, we must determine whether there is a substantial relationship between the Brown firm's representation of plaintiffs in this lawsuit to satisfy an unpaid judgment and Swanger's representation of Miracle in the fall of 1988 on a labor matter.

In the Brown firm's representation of plaintiffs, all counts of plaintiffs' petition stem from the relationship between Mira, Miracle, and Ahrens Co. and the transfer of assets. The only evidence offered by defendants in support of the existence of a substantial relationship is testimony of Mira, Miracle, and Ahrens Co.'s close relationship and "[i]t's the same type of information that Mr. Swanger could have gained and ... did gain from his employment relationship with Miracle."

In Swanger's representation of Miracle, Swanger spent approximately two hours advising Miracle by telephone on a labor union contract question. The record does not contain any evidence that the subject of plaintiffs' lawsuit was raised; nor does the record reveal that the impact of the labor issue upon plaintiffs' lawsuit was discussed during the course of these telephone conversations. We conclude that the two representations concern separate and distinct subject matter; the factual context of the two are not the same. We also conclude that Swanger's earlier representation of Miracle did not provide the Brown firm with any new information concerning the corporate structure and dealings of defendants. In addition, the record contains no evidence that Swanger received any information that was either confidential or prejudicial to plaintiffs in this lawsuit. Therefore, we conclude that the two representations are not substantially related.

We hold that the two representations at issue in this case do not meet the substantial relationship test as set forth in *Richers* and *Killian*. Thus, the trial court did not abuse its discretion in denying defendants' motion to compel withdrawal of plaintiffs' attorneys.

The remaining issues of this lawsuit were brought in equity. Thus, our scope of review for the following issues is de novo. Iowa R.App.P. 4.

II. *Bulk transfer law.* On cross-appeal, plaintiffs contend that the trial court erred by finding that their claim against Ahrens Co. for an alleged violation of Iowa's bulk transfer law was barred by the six-month statute of limitations in Iowa Code section 554.6111 (1983). This section provides that no action shall be brought "more than six months after the date on which the transferee took possession of the goods unless the transfer had been concealed." Iowa Code § 554.6111 (1983). The transfer occurred in December 1983. In February 1987, approximately three years later, plaintiffs filed this action seeking relief. Thus, plaintiffs are barred by the six-month time limitation in section 554.6111 "unless the transfer has been concealed" or the discovery rule applies.

The trial court found that the sale of Mira's assets to Ahrens had not been concealed. It found that plaintiffs and their attorney had general knowledge of the sale, thus making application of the discovery rule inequitable. On our de novo review, we agree with the trial court's findings. We further find that plaintiffs, through their attorney, acquired imputed knowledge of the transfer of Mira's assets from deposition testimony taken in May 1984 by plaintiffs' law firm in a similar lawsuit.

Assuming that the discovery rule is applicable to the statute of limitations in section 554.6111, the facts do not support its application. Actual or imputed knowledge of facts that would place a party on inquiry notice that a cause of action exists commences the limitation period. *Franzen v. Deere & Co.*, 377 N.W.2d 660, 662 (Iowa 1985). Plaintiffs and their attorneys pos-

sessed imputed knowledge that Mira's assets were held by Ahrens Co. This knowledge was sufficient to place plaintiffs on inquiry notice regarding the transfer. Thus, we hold that plaintiffs' bulk sales claim is barred by the six-month statute of limitations in Iowa Code section 554.6111.

III. *Equitable lien and continuing corporation theory of liability.* Plaintiffs sought recovery against Miracle and Ahrens Co. under an equitable lien or continuing corporation theory. The trial court ruled that Miracle was responsible under this theory to the extent of the assets transferred, which amounted to ten trucks or the proceeds therefrom. The court rejected plaintiffs' similar claim against Ahrens Co.

On appeal, Miracle challenges the court's factual determination and its application of a lien in plaintiffs' favor. On cross-appeal, plaintiffs urge that the award of damages against Miracle was inadequate and that they were also entitled to recover against Ahrens Co.

■■■ We have recognized principles that allow the attachment of an equitable lien to properly transferred property or its traceable proceeds. *Tubbs v. United Central Bank, N.A.,* 451 N.W.2d 177, 185 (Iowa 1990); *Cox v. Waudby,* 433 N.W.2d 716, 719–20 (Iowa 1988); *In re Receivership of Hollingsworth,* 386 N.W.2d 93, 96–97 (Iowa 1986). An equitable lien is a remedial alternative to a constructive trust. *Hollingsworth,* 386 N.W.2d at 96. An equitable lien is a restitution concept applied by courts of equity to avoid injustice. *Tubbs,* 451 N.W.2d at 185 (citing Restatement of Restitution § 161, at 650–52 (1937)). It may be "implied and declared by a court of equity out of general considerations of a right and justice as applied to the relations of the parties and the circumstances of their dealings." *Tubbs,* 451 N.W.2d at 185 (quoting *Farmers & Merchants Bank v. Commissioner of Internal Revenue,* 175 F.2d 846, 849 (8th Cir.1949)). The right to acquire an equitable lien may be cut off by the superior rights of innocent third parties, such as a good faith purchaser for value who takes the property

without notice of the lien. *Cox,* 433 N.W.2d at 720; *Luedecke v. Des Moines Cabinet Co.,* 140 Iowa 223, 228, 118 N.W. 456, 457 (1908).

■■ Transfers by corporations may be subject to the application of this equitable rule. In a proper case, creditors of a corporation possess an equitable lien upon the assets of a corporation and may pursue this right against the property in the hands of one who is not a good faith purchaser. *Nelson v. Pampered Beef–Midwest, Inc.,* 298 N.W.2d 281, 285 (Iowa 1980). In *Nelson* we further elaborated:

> The rule is recognized that, where one corporation transfers all its assets to another, not in the ordinary course of business, the very circumstances of the case imply full knowledge on the part of the transferee of all the facts necessary to charge the property in the hands of the purchaser with the debts of the seller; and this is especially true where the purchasing corporation is a product of the ingenuity of the stockholders of the old corporation, who took the property with full knowledge of the right of the plaintiff and transferred it to the new body of their own creation.

*Id.* (quoting *Farnsworth v. Muscatine Produce & Pure Ice Co.,* 177 Iowa 21, 36, 158 N.W. 741, 747 (1916)). We now examine these equitable lien principles in light of the respective claims of the parties in this case.

■■ A. *Miracle.* Under this record, we conclude that plaintiffs have established an equitable lien against Miracle for the proceeds of the assets transferred from Mira to Miracle and sold to Ahrens Co. At a November 10, 1987, meeting, Miracle's Board of Directors took action to sell Mira's assets to C.W. Ahrens, who was Chairman of the Boards of Miracle and Mira. Miracle's Board authorized its executive committee to carry out this sale. There is no record that Mira took any independent action on this sale. All of the proceedings originated with Miracle's Board except that the transfer of the agricultural division's assets was made by Mira.

We agree with the trial court's finding that "Mira was absorbed by Miracle and was then phased out ... notwithstanding no formal articles of merger were filed." This de facto merger of the assets of Mira into Miracle was neither a sale nor a transfer in the ordinary course of business.

We agree with the trial court's holding that plaintiffs, as creditors of Mira, are entitled to pursue their claim against Miracle. Under the authority of *Tubbs* and *Nelson,* we hold that the circumstances of this case entitle plaintiffs to an equitable lien against either the assets transferred to Miracle or to the traceable proceeds of these transferred assets.

The trial court limited plaintiffs' recovery against Miracle to the extent of ten trucks. We disagree with the court's limitation. In addition to the ten trucks, Miracle took control of Mira's accounts receivable and leases and then caused their sale to Ahrens Co.

We are aware the ledger shows that Mira owed Miracle money and that Miracle claims an entitlement to the accounts receivable, leases, and vehicles. We find little merit in this contention. Miracle had complete control of the figures that appeared on Mira's ledger accounts. Miracle set its own prices on the products it manufactured and supplied to Mira. Miracle maintained Mira's books. Miracle's Board proceedings of January 31, 1983, reveals a statement by its financial officer that Miracle's books "did not truly reflect the proper allocation of costs of goods produced between the companies. That these figures were based purely upon imagination rather than basic costs." Mira's employees simply sold the products and drew their salaries; Miracle completely controlled all decisions that affected Mira's profitability and net worth.

Under these circumstances, it would be inequitable to give Miracle, as a creditor of Mira, priority over plaintiffs' claim against Mira. Miracle received $200,000 in cash and a note for the sale balance. We hold that plaintiffs may have a personal judgment against Miracle.

We affirm the trial court's judgment against Miracle based on an equitable lien theory of recovery. We modify the amount of the judgment. Plaintiffs shall have judgment against Miracle for the sum of $48,462 with interest at the rate of ten percent per annum from November 28, 1983.

B. *Ahrens Co.* The trial court denied application of an equitable lien theory of recovery against Ahrens Co. It reasoned that: (1) Ahrens Co. did not agree to assume Mira's debts; (2) there was no merger between Mira and Ahrens Co.; (3) Ahrens Co. was not a mere continuation of Mira; and (4) the transaction was not entered into for the purpose of avoiding creditors. However, these are not the appropriate findings for the creation of an equitable lien. Rather, these findings are independent requirements for establishing personal liability against a purchasing company for the debts of a selling corporation. *See Nelson,* 298 N.W.2d at 287 (quoting *Luedecke,* 140 Iowa at 226, 118 N.W. at 457). We agree with the trial court's conclusion that these independent requirements are not met in this case and that personal liability should not be imposed on Ahrens Co. However, whether or not plaintiffs may impose an equitable lien on purchased assets or proceeds presents a separate issue.

The record in this case presents the issue of whether Miracle's transfer of Mira's assets to Ahrens Co. without making adequate provision for the payment of Mira's unsecured debts provides plaintiffs an equitable lien remedy against these assets or the proceeds therefrom. We conclude that plaintiffs are entitled to an equitable lien remedy against Ahrens Co. The assets of Mira came under the ownership of Ahrens Co. by a series of decisions made by Miracle's Board and C.W. Ahrens, who also founded Ahrens Co. When the transfer of Mira's assets was initiated, C.W. Ahrens was the director and chief officer of both Mira and Miracle. This was not an arm's-length transaction in the ordinary course of business; rather, the transaction was an in-house deal. Defendant Juhl, who was the financial officer and

director of both Mira and Miracle, determined the value of Mira's assets in December 1983 and subsequently made major adjustments before setting the final price in 1984. Later, Juhl also worked as a certified public accountant for Ahrens Co.

More important, Juhl, who engineered Mira's accounting and sale price, did not protect plaintiffs as creditors of Mira. Miracle set up a reserve for the payment of Mira's debts; however, this reserve was another venture guided by imagination and proved to be inadequate. C.W. Ahrens was in a position to control Juhl and the three corporations that were involved in the sale of Mira's assets.

We conclude that the transfer of Mira's entire assets was not an ordinary business transaction. Nor can Ahrens Co. claim to be a good faith purchaser. Therefore, we hold that plaintiffs are entitled to an equitable lien against the ten vehicles, accounts receivable, leases, or the proceeds therefrom, to the extent of their judgment against Mira. We reverse that portion of the trial court's ruling denying application of the equitable lien theory of recovery against Ahrens Co. and direct it to enter judgment in accordance with this section.

IV. *Statutory liability.* Defendants contend that the trial court erred by holding C.W. Ahrens, Paul Ahrens, and Randy Juhl jointly and severally liable for breaching the statutory duty imposed by Iowa Code section 496A.44(3) (1983) [1] to make adequate provision for Mira's debts, obligations, and liabilities in the distribution of Mira's assets. The trial court found that these individual defendants breached this statutory duty by failing to "provide for the contingent liability which could arise ... in the event of recovery by [the Nachazels]." We reverse the trial court's ruling

holding the individual defendants liable under section 496A.44(3).

The plain language of section 496A.44(3) allows only a corporation, not a third-party creditor, to bring an action. In allowing plaintiffs to recover under section 496A.44(3), the trial court relied on the reasoning of the Colorado supreme court in *Ficor, Inc. v. McHugh*, 639 P.2d 385 (Colo. 1982), which allowed a creditor to bring suit under a Colorado statute containing language identical to section 496A.44(3). However, *Ficor* appears to be a minority view and we decline to adopt its reasoning. *See Lowell Staats Mining Co. v. Philadelphia Elec. Co.*, 878 F.2d 1271, 1277 (10th Cir.1989) (stating that *Ficor* created a narrow exception for when a creditor can sue on its own behalf).

In the absence of statutory language giving creditors a direct cause of action against corporate officers and directors, the rule generally followed is that a creditor of a corporation may not maintain a personal action at law against officers or directors who have committed a wrong against the corporation, such as mismanagement, waste, or diversion of assets. *See* 18B Am.Jur.2d *Corporations* § 1842, at 693 (1985). The reason is that officers and directors owe a duty to the corporation and not to third parties who might be injured incidentally by the wrong committed against the corporation. *Id.* at 693–94. Additionally, privity is lacking due to the absence of a contractual relationship between corporate officers and creditors. *Id.* at 693.

The common reason advanced by other courts in interpreting the same or similar corporate statutes is that a creditor does not have the right to bring an action directly against corporate officers and directors

1. Section 496A.44(3) provides in relevant part:
   In addition to any other liabilities imposed by law upon directors and officers of a corporation, a director shall be liable in the following circumstances, unless the director complies with the standard provided in this chapter for performance of the duties of directors:
   ....
   3. A director who votes for or assents to any distribution of assets of a corporation to its shareholders during the liquidation of the corporation without the payment and discharge of, or making adequate provision for, all known debts, obligations, and liabilities of the corporation shall be liable to the corporation jointly and severally with all other directors so voting or assenting for the value of such assets which are distributed, to the extent that such debts, obligations and liabilities of the corporation are not thereafter paid and discharged.

when the governing statute does not contain the word "creditor." *See, e.g., Lowell Staats,* 878 F.2d at 1277 (refusing to apply *Ficor*'s reasoning to same Colorado statute and holding that judgment creditor in individual capacity could not sue director); *Louisiana World Exposition v. Federal Ins. Co.,* 858 F.2d 233, 239–40 (5th Cir.1988) (cause of action runs solely in favor of corporation when plain language of Louisiana statute does not give creditor direct cause of action against director of insolvent corporation); *Delgado Oil Co., Inc. v. Torres,* 785 F.2d 857, 860–61 (10th Cir.1986) (rejecting application of *Ficor* reasoning to bankruptcy statute and holding that creditor's cause of action can be enforced only by bankruptcy trustee for debtor corporation); *Planned Consumer Mktg., Inc. v. Coats & Clark,* 127 A.D.2d 355, 369, 513 N.Y.S.2d 417, 426 (1987) (holding that judgment creditor is not proper party to bring an action against director for unlawful distribution of corporate assets under New York statute giving corporation the exclusive right to enforce liability against directors), *aff'd on other grounds,* 71 N.Y.2d 442, 522 N.E.2d 30, 527 N.Y.S.2d 185 (1988); *Schaeffer v. DeChant,* 11 Ohio App.3d 281, 282, 464 N.E.2d 583, 585 (1983) (same as *Planned Consumer*). Even when the relevant statutory language provided that directors "shall be jointly and severally liable to the corporation for the benefit of its creditors" the court held that creditors did not have standing to sue. *See Aries Ventures Ltd. v. Axa Finance,* 729 F.Supp. 289, 297–98 (S.D.N.Y.1990). The rule announced in *Ficor* has appeal, but we believe that the statute's plain language must be followed. Any change must be left to future legislation.

Thus, upon consideration of the foregoing cases and the plain language of Iowa Code section 496A.44(3), we hold that the right to bring an action under this section runs only to the corporation, and not to creditors.

The trial court also awarded a judgment against Miracle under count IV of plaintiffs' petition which we perceive to be an offshoot from the statutory claim against the individual directors. Defendants do not include this as an issue on appeal. Therefore, we must affirm the trial court's judgment against Miracle. *Moore v. Vanderloo,* 386 N.W.2d 108, 113 (Iowa 1986); *Iowa Glass Depot, Inc. v. Jindrich,* 338 N.W.2d 376, 381 (Iowa 1983); *Hubby v. State,* 331 N.W.2d 690, 694 (Iowa 1983).

V. *Other theories of liability.* On cross-appeal, plaintiffs urge that the trial court erred in failing to hold Miracle liable on a fraudulent conveyance theory and in failing to pierce the corporate veil of Mira and find its sole shareholder, Miracle, liable for Mira's debts. In section III, we held Miracle liable for the same relief requested under these theories of liability. Thus, we decline to discuss these theories.

■ ■ ■ Plaintiff also requests an award of punitive damages. The trial court determined that defendants' conduct falls short of the type necessary to impose punitive damages. We agree. To justify such an award, the wrongful conduct must be committed with willful or reckless disregard for the rights of another. *Berryhill v. Hatt,* 428 N.W.2d 647, 656 (Iowa 1988). Moreover, punitive damages are always discretionary. *Id.* We have not considered the issue of liability under every count of plaintiffs' petition; however, our review of the entire record causes us to conclude that defendants' conduct did not rise to a level which justifies an award of punitive damages.

VI. *Summary.* Our holding can be summarized as follows: (1) We affirm the trial court's refusal to disqualify plaintiffs' counsel; (2) we reverse the judgment and decree against C.W. Ahrens, Randy Juhl, and the Estate of Paul Ahrens; (3) we affirm the judgment against Miracle but modify it to allow a judgment and decree against Miracle for $48,462 plus interest at ten per cent per annum from November 28, 1983; (4) we reverse the dismissal of plaintiffs' claim against Ahrens Co. and direct that a judgment and decree be entered against Ahrens Co. for the imposition of an equitable lien, not to exceed the amount of the judgment against Miracle, against the vehicles, accounts receivable, and leases or

the proceeds therefrom; and (5) we affirm the trial court in all other respects. Finally, we assess the costs incurred in both the trial court and on appeal against Miracle, Ahrens Co., and plaintiffs equally.

AFFIRMED IN PART AS MODIFIED AND REVERSED IN PART.