In the Interest of J.C., A Child, C.C. and B.C., Parents, Appellants.

In the Interest of A.C. and S.C., Minor Children, C.C., Mother, Appellant.

No. 96–249.

Court of Appeals of Iowa.

Nov. 27, 1996.

Randall C. Stravers and James Q. Blomgren of Pothoven, Blomgren & Stravers, Oskaloosa, for appellants.

Thomas J. Miller, Attorney General, and Kathrine S. Miller–Todd, Assistant Attorney General, for appellee State.

Steven Gardener of Kiple, Kiple, Denefe, Beaver & Gardener, Ottumwa, for appellees minor children.

Considered by SACKETT, C.J., and HABHAB and VOGEL, JJ.

SACKETT, Chief Judge.

This is a consolidated appeal of two appeals regarding three children who all have the same birth mother, appellant Cyra. The first appeal is a challenge to an order reviewing the situation of Amber, born in March 1992, and Scotti, born in May 1993, and leaving them in foster care. Appellant Barry is the father of Scotti. The paternity of Amber is not known. The second appeal is from a finding that Jaimie, born in December 1994, is a child in need of assistance. Barry is her father. The parents also contend the juvenile court should not have refused to appoint a new attorney for Barry after he and Cyra separated and their interests allegedly became conflicting. We affirm in part, reverse in part, and remand to the district court.

Cyra is the birth mother of two other children not involved in these appeals. These children, found to be children in need of assistance, are currently in the custody of their birth fathers. Cyra's sometimes lack of cooperation with service providers stems

from distrust following the results of these proceedings.

In February 1994, Amber and Scotti were removed from their parental home by emergency order after Amber was taken to a hospital an hour from their home with a blood alcohol content of .198. The evidence was Amber had accidentally ingested the alcohol at the home of Cyra's friend where she was being watched. Cyra and Barry began receiving "parent skill development services" after this incident.

Amber and Scotti were subsequently found to be children in need of assistance. The finding was based on the above incident and a finding they failed to thrive.

Amber and Scotti were returned to Cyra's care in April 1994. They were again removed following the entry of an emergency order in June 1994. This followed Scotti entering the hospital with seizures and a temperature of 107.2 degrees. She was diagnosed as having a heat stroke. There was evidence the room she occupied was not well ventilated and Scotti may not have been given sufficient liquids. The heat index at the time in the community where the family lived was 97 degrees.

At the end of August 1994, an order was entered and Amber and Scotti remained in foster care. Cyra and Barry were given visitations but it was ordered visitation be supervised. It was further ordered Cyra and Barry be given parent skill development instruction.

In August 1995, a petition was filed concerning Jaimie, alleging she was imminently likely to be abused. Cyra admittedly had hit Jaimie and called her a "little bitch." The child was examined by a doctor. She was found to be growing appropriately and to be active and alert. The doctor found redness on her back consistent with being hit. Cyra voluntarily placed Jaimie in foster care for one month before she was returned home.

Also in August 1995, a review order addressed the interests of Amber and Scotti. The parents had serious disagreements with opinions on child care advanced by the social worker assigned to them. The court found Cyra and Barry resistive to services, hostile, and not accepting that they needed assistance in caring for the children. Amber and Scotti remained in foster care.

A September 1995 hearing was held addressing Jaimie's interest. It was continued at Cyra and Barry's request. Jaimie was put in foster care at the request of the State and the guardian ad litem. In October 1995, the juvenile court filed an order finding Jaimie to be a child in need of assistance as defined under Iowa Code sections 232.2(6)(b) (physical abuse or neglect imminent) and (c)(2) (improper supervision) (1995).

The court found Cyra had a history of abusing her children, was unable to accept responsibility for that abuse, was not benefiting from services, and both she and Barry were not cooperative with service providers. The court considered evidence Cyra had in August 1989 punished one of her children not a subject of these proceedings by tying her hands to her knees and slapping the child and leaving bruises. The court also considered evidence Cyra had left the child not subject to these proceedings with a person the child said was sexually abusing her. The court concluded Jaimie was in imminent danger of abuse and neglect. Jaimie remained in foster care with her sisters. Cyra and Barry were given visitation but it was ordered supervised. Cyra and Barry were directed to have psychological evaluations. They were to engage in individual counseling. Cyra testified at one point in the proceedings she discontinued counseling because they could not afford it. The parents live at or below the poverty level.

In December 1995, the interests of Jaimie were again before the court. Shortly thereafter, Barry asked that a new attorney be appointed to represent him. The court preliminarily stated, "Absent a showing of a separation of the parties and distinct interests and circumstances of the parents, the Court will not appoint separate counsel."

Several weeks later, Barry told the court he and Cyra were separated. He renewed his request for his own attorney. Again, the court denied the motion concluding it was "unpersuaded that there is such separate interests of the parties at this time as to

warrant the appointment." Later, when the court filed an order confirming Jaimie's placement in foster care, the court characterized Barry's claim that he was separated from Cyra as a "ploy," and if Jaimie were returned, Cyra would continue to be the primary caretaker and Cyra has inadequate parenting skills. The court found Cyra continued to resist instructions on parenting.

A hearing concerning the interests of Amber and Scotti was held early in 1996. Barry testified he was told by service providers he had to choose between Cyra and his children. He testified he had not lived with Cyra for one month. He again asked for his own attorney. He admitted he continued to have contact with Cyra, she visits him at his job, and that she had keys to his mobile home " 'cause she had her dogs there and she takes care of 'em." The court refused Barry's request. The juvenile court then found in part:

> [The] parents are engaging in a ploy designed to regain custody of the children by [Barry] with mother gaining access to them thereby. This conclusion is strongly supported by repeated indications that [Barry] yields to mother's wishes on frequent occasions and that he does not act independently of her.

> Although evidence indicates that [Barry] has acted appropriately with the children during visitations, there is little evidence to suggest that he would be an appropriate caretaker of the children, or either of them, on his own for any extended period of time.

> That the evidence fails to establish by a preponderance thereof that the children could be returned to the parents or safely placed with either of them at this time.

We first address Barry's claim he should have his own attorney.

The attorney for the parents has stated there is a conflict between the parents' positions and desires in the case. They have been separated at times during the proceeding. The father has been consistent with his visits.

■ It is not questioned that a party can expect unfettered independence of professional judgment of a lawyer whose loyalty to the person is total. *Killian v. Iowa District Court of Linn County,* 452 N.W.2d 426, 429 (Iowa 1990). A lawyer cannot in the absence of client consent after full disclosure represent clients whose interests conflict with each other. Iowa Code of Professional Responsibility for Lawyers, DR5–104A; *see Committee on Professional Ethics v. Oehler,* 350 N.W.2d 195, 198–99 (Iowa 1984).

There is a conflict when one attorney representing two people cannot use the attorney's best efforts to exonerate one client for fear of implicating the other and the attorney is faced with the dilemma of abandoning or pursuing defenses and tactics that would help one client and hurt the other.

■ Barry was told by a worker with the Iowa Department of Human Services he needed to choose between Cyra and the children. There is a conflict between Barry and Cyra's interests. A separate attorney should be appointed for Barry. We remand for that purpose.

The next question is whether the juvenile court properly found Jaimie a child in need of assistance and found Amber and Scotti should remain subject to the jurisdiction of the juvenile court.

We review de novo. *In re J.R.H.,* 358 N.W.2d 311, 317 (Iowa App.1984).

A recitation of all the problems Cyra has had in caring for her children would serve no useful purpose. Cyra has demonstrated she has a violent temper. She has shown a lack of attention to the girls' medical and emotional needs.

■ We give weight to the fact findings of the juvenile court who observed the witnesses testifying. *See In re S.V.,* 395 N.W.2d 666, 668 (Iowa App.1986). The findings must be supported by clear and convincing evidence. Iowa Code § 232.96(2) (1995). We can look to current evidence and past performance in assessing the evidence. *See In re E.W. and A.W.,* 434 N.W.2d 898 (Iowa App.1988); *In re Dameron,* 306 N.W.2d 743, 745 (Iowa 1981). The children should all remain children in need of assistance. We affirm the juvenile court on these issues.

We affirm the finding the children remain children in need of assistance and remain in foster care. We remand to appoint a separate attorney for Barry. We do not retain jurisdiction.

**AFFIRMED IN PART; REVERSED IN PART AND REMANDED.**