Russell P. BOTTOMS, Jr., Appellee,

v.

Jack W. STAPLETON, Individually, S & S Equipment & Supply, Ltd., Paducah Gear & Machine Co., L.C., and Jack W. Stapleton, as Officer and Majority Owner of Paducah Gear & Machine Co., L.C., Appellants.

Paducah Gear & Machine Co., L.C., and Jack W. Stapleton, Individually and as Officer and Majority Owner of Paducah Gear & Machine Co., L.C., Appellants,

v.

Russell P. Bottoms, Jr., Appellee.

No. 04–0132.

Supreme Court of Iowa.

Dec. 2, 2005.

Mark E. Weinhardt and Margaret C. Callahan of Belin Lamson McCormick Zumbach Flynn, A Professional Corporation, Des Moines, for appellants.

J. Campbell Helton and Jonathan Kramer of Whitfield & Eddy, P.L.C., Des Moines, for appellee.

TERNUS, Justice.

A minority shareholder brought this action against a limited liability company and its majority shareholder seeking damages for breach of fiduciary duty and conversion, judicial dissolution of the company, an accounting, and appointment of a receiver. Upon the minority shareholder's motion to disqualify the defendants' counsel, the district court held that counsel could not represent the company, but could continue to represent the majority shareholder. We granted the defendants' application for interlocutory appeal. Although the potential for a conflict of interest exists, the record does not establish there is currently a significant risk that the defense attorneys' representation of one defendant will materially interfere with their zealous representation of the other defendant. Therefore, we reverse the district court's order and remand this case for further proceedings.

I. *Background Facts and Proceedings.*

The appellant, Paducah Gear & Machine Co., L.C., is an Iowa limited liability company that provides industrial machine shop repairs and service from a facility located in Paducah, Kentucky. Paducah Gear was formed in 1998 and has two shareholders. The appellant, Jack Stapleton, owns fifty-one percent of the company, and the appellee, Russell Bottoms, owns the remaining forty-nine percent.

Pursuant to the parties' agreement, Stapleton handled the financial, recordkeeping, and corporate aspects of the company from Iowa, where Stapleton lived, while Bottoms worked on site at the Paducah, Kentucky shop, supplying the machinist services and managing the machinist crew. After several years, the relationship between the co-owners began to deteriorate. In March 2002, Bottoms and Stapleton ceased doing business together. That same month Bottoms incorporated Global Gear & Machine Co. in competition with Paducah Gear.

On July 17, 2003, Bottoms filed this lawsuit against Stapleton and Paducah Gear.[1] The plaintiff alleged "Stapleton converted certain assets of Paducah Gear to his own use, made certain distributions to himself at the expense of Plaintiff and Paducah Gear, and has refused to fulfill his contractual and fiduciary duties." Based

---

1. Bottoms also sued S & S Equipment & Supply, Ltd., a business owned by Stapleton. Apparently at one time Stapleton held his interest in Paducah Gear through S & S. Bottoms does not dispute Stapleton's assertion that any possible involvement of S & S has no significance to the issues at hand. Therefore, we do not separately discuss S & S in our opinion.

on this conduct, the plaintiff pursued various remedies in six counts. In Count I Bottoms sought compensatory and punitive damages due to Stapleton's alleged breach of fiduciary duty to the plaintiff. In Count II Bottoms requested a judicial dissolution of Paducah Gear or, alternatively, an order requiring Paducah Gear to pay to Bottoms his "fair share of the assets" of the company. In Count III the plaintiff asserted Stapleton "intentionally misappropriated and took dominion and control over [the plaintiff's] ownership interests." As in Count I, the plaintiff sought a money judgment against Stapleton. In Count IV Bottoms demanded an accounting, and in Count V he asked for the immediate appointment of a receiver to control the assets of Paducah Gear. In Count VI Bottoms requested a temporary injunction as an alternative to the appointment of a receiver and sought an order preserving the assets of Paducah Gear.

The defendants, represented by Richard R. Chabot of Sullivan & Ward P.C., filed an answer denying the plaintiff's accusations of wrongdoing and entitlement to equitable relief. The defendants also filed counterclaims alleging Bottoms had misappropriated proprietary information and other assets of Paducah Gear and had improperly interfered with Paducah Gear's business relationships.

Subsequently, the plaintiff filed a motion to disqualify the law firm of Sullivan & Ward, P.C. from representing both defendants. This motion precipitated the appearance of Mark Weinhardt of the law firm of Belin Lamson McCormick Zumbach Flynn, A Professional Corporation, on behalf of the defendants and Sullivan &

Ward. Bottoms then filed a motion to disqualify the Belin law firm as well from simultaneously representing Stapleton and Paducah Gear.

The district court granted the plaintiff's motions to disqualify and held that neither Sullivan & Ward nor the Belin law firm could represent Paducah Gear. It observed, "Assuming that the allegations of wrongdoing against Stapleton can be proven, there is a significant potential for divergence of the interests of Paducah and Stapleton." The court noted that under the Iowa Code of Professional Responsibility, which was in effect at the time, as well as under the Iowa Rules of Professional Conduct, which were then under consideration, clients were allowed to consent to conflicting multiple representation. But the court concluded such consent on behalf of an entity must come from a disinterested person, a person other than the client who would be jointly represented with the entity. Here, the only persons who could consent were Bottoms, who would not consent, and Stapleton, who would not be disinterested. The court concluded, therefore, that it was necessary for Paducah Gear to retain separate counsel. If the parties could not agree on such counsel, the court required the parties to submit the dispute to the court for resolution.

 This court granted the defendants' application for interlocutory appeal. The sole issue on appeal is whether the district court abused its discretion in ruling the potential for a conflict of interest between Paducah Gear and its majority shareholder was sufficient to preclude joint representation of the company and Stapleton.[2] *See Doe v. Perry Cmty. Sch. Dist.,*

---

**2.** Because we determine the evidence does not support a finding that there is a significant potential for divergent interests, we do not decide whether the district court properly ruled the conflict was not waivable. *See* Iowa

R. of Prof'l Conduct 32:1.7(b) (outlining circumstances under which dual representation is permitted notwithstanding concurrent conflict of interest, including requirement of "each affected client giv[ing] informed con-

650 N.W.2d 594, 597 (Iowa 2002) ("We review a ruling on an attorney disqualification motion for abuse of discretion."). A court abuses its discretion when its ruling is based on clearly untenable grounds, such as reliance upon an improper legal standard or error in the application of the law. *Id.* The district court's "factual findings in disqualification cases will not be disturbed on appeal if they are supported by substantial evidence." *Killian v. Iowa Dist. Ct.,* 452 N.W.2d 426, 428–29 (Iowa 1990).

## II. *Discussion.*

■■■ A. *General principles regarding attorney disqualification.* The right of a party to choose his or her own attorney is important, but it must be balanced against the need to maintain "the highest ethical standards" that will preserve the public's trust in the bar and in the integrity of the court system. *Id.* at 430. In balancing these interests, a court must also be vigilant to thwart any misuse of a motion to disqualify for strategic reasons. *See id.; accord* 1 Geoffrey C. Hazard, Jr. and W. William Hodes, *The Law of Lawyering* § 10.2, at 10–10 (3d ed. 2004 Supp.) (stating "policymaking with respect to conflicts of interest regulation must take account of the opportunities for manipulation and tactical infighting") [hereinafter *"The Law of Lawyering "*].

■ Thus, our starting point in evaluating a claim that an attorney should be disqualified from representing a party is the ethical principles outlined in the Iowa Rules of Professional Conduct. *See Killian,* 452 N.W.2d at 429. (We focus on the Iowa Rules of Professional Conduct, which became effective on July 1, 2005, since the future conduct of the attorneys in this litigation will be governed by these rules rather than the old Iowa Code of Professional Responsibility.) The rule governing the conflict at issue here is rule 32:1.7,[3] which addresses the problem of concurrent conflicts of interest:

> (a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
>
> > (1) the representation of one client will be directly adverse to another client; or
> >
> > (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client, or a third person or by a personal interest of the lawyer.
>
> (b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:

sent, confirmed in writing"); *id.* r. 32:1.13(g) (stating consent to dual representation of organization and its "directors, officers, employees, members, shareholders, or other constituents" may not be given by "the individual who is to be represented").

3. The comparable provision of the discarded Iowa Code of Professional Responsibility is DR 5–105(C). It provided that "[a] lawyer shall not continue multiple employment if the exercise of independent professional judgment on behalf of a client will be or is likely

to be adversely affected by the representation of another client, except to the extent permitted under DR 5–105(D)." *See* Iowa Code of Prof'l Responsibility DR 5–105(C). DR 5–105(D) allowed multiple representation when "it is obvious that the lawyer can adequately represent the interest of each [client] and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of the lawyer's independent professional judgment on behalf of each." *See id.* DR 5–105(D).

(1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;

(2) the representation is not prohibited by law;

(3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and

(4) each affected client gives informed consent, confirmed in writing.

(c) In no event shall a lawyer represent both parties in dissolution of marriage proceedings.

Iowa R. of Prof'l Conduct 32:1.7; *see also id.* r. 32:1.13(g) (stating "lawyer representing an organization may also represent any of its directors, officers, employees, members, shareholders, or other constituents, subject to the provisions of rule 32:1.7[, but any] consent shall be given by an appropriate official of the organization *other than the individual who is to be represented,* or by the shareholders" (emphasis added)). Bottoms does not argue that the defendants' interests are "directly adverse," but rather that these parties have potentially differing interests. *See generally* 1 *The Law of Lawyering* § 11.8, at 11–22 (stating rule 1.7(a)(1) "applies where *directly* adverse representation *will* take place, as when one current client is about to file suit against another current client"). Therefore, we focus our discussion on rule 32:1.7(a)(2). *See* Iowa R. of Prof'l Conduct 32:1.7 cmt. [23] (stating "simultaneous representation of parties whose interests in litigation may conflict, such as coplaintiffs or codefendants, is governed by paragraph (a)(2)").

■ B. *Existence of disqualifying conflict.* The question to be answered under rule 32:1.7(a)(2) is whether there is "a significant risk" that counsel's representation of one client "will be materially limited by [his or her] responsibilities to another client." *See id.* r. 32:1.7(a)(2). Although related to the old "appearance of impropriety" test, the modern approach focuses on the degree of risk that a lawyer will be unable to fulfill his or her duties to both clients. *See generally* 1 *The Law of Lawyering* § 10.4, at 10–12 to 10–13 (noting the old standard was "too vague and subjective" and was dropped from the ABA Model Rules of Professional Conduct).

A comment to rule 32:1.7 sheds light on when a conflict of interest will materially limit an attorney in the performance of the attorney's responsibilities:

> [A] conflict of interest exists if there is a significant risk that a lawyer's ability to consider, recommend, or carry out an appropriate course of action for the client will be materially limited as a result of the lawyer's other responsibilities. . . . The mere possibility of subsequent harm does not itself require disclosure and consent. The critical questions are the likelihood that a difference in interests will eventuate and, if it does, whether it will materially interfere with the lawyer's independent professional judgment in considering alternatives or foreclose courses of action that reasonably should be pursued on behalf of the client.

Iowa R. of Prof'l Conduct 32:1.7 cmt. [8]; *see also id.* r. 32:1.7 cmt. [29] ("[R]epresentation of multiple clients is improper when it is unlikely that impartiality can be maintained."). The representation of codefendants will give rise to a conflict in situations involving a "substantial discrepancy in the [represented] parties' testimony, incompatibility in positions in relation to an opposing party or the fact that there are substantially different possibilities of set-

tlement of the claims or liabilities in question." *Id.* r. 32:1.7 cmt. [23].

Our examination of the plaintiff's brief shows a marked absence of any specification of the precise conflict in the present case. Nonetheless, since the plaintiff asks that we affirm the district court, we will examine the district court's ruling for an elucidation of the plaintiff's claim. As summarized by the district court, "[t]he gist of Bottoms' argument is that Stapleton has breached duties to the company by 'converting or embezzling funds' and that the interests of Stapleton and Paducah are therefore adverse to each other." The court's ruling was succinct:

> Assuming that the allegations of wrongdoing against Stapleton can be proven, there is a significant potential for divergence of the interests of Paducah and Stapleton. A potential conflict of interest is sufficient to require that steps be taken to assure that all parties are adequately represented.

 In considering this ruling, we first note that the concept of a *potential* conflict of interest is foreign to the new ethical rule. That is because rule 32:1.7(a)(2) states that a conflict of interest "*exists* if . . . there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client." Iowa R. of Prof'l Conduct 32:1.7(a)(2) (emphasis added). In other words, if there is a significant risk that representation of one client will materially limit the representation of another client, a conflict of interest actually exists; it is not merely potential. *See* 1 *The Law of Lawyering* § 10.4, at 10–13. Thus, only an actual conflict of interest, as defined in rule 32:1.7(a), will justify disqualification.

 Our review, then, will focus on the district court's conclusion that "there is a significant potential for divergence of the interests of Paducah and Stapleton." Translated to the terminology of rule 32:1.7, the court, in essence, found there was a significant likelihood that the defendants would have differing interests in this lawsuit. *See* Iowa R. of Prof'l Conduct 32:1.7 cmt. [8] (stating one of the critical questions under rule 32:1.7 is "the likelihood that a difference in interests will eventuate"). We must decide whether there is substantial evidence to support this finding.

As the litigation is presently postured, the interests of Stapleton and Paducah Gear are not directly adverse. Bottoms' claims against Stapleton are brought in his individual capacity and not on behalf of the company. He seeks only amounts to which he is personally entitled as an owner of the company, including sums he claims were tortiously converted by Stapleton. Moreover, the equitable claims asserted by Bottoms against Paducah Gear are merely ancillary to his damage claims against Stapleton. Bottoms seeks to identify company assets and preserve them so he can receive his "fair share" of the company. Importantly, the plaintiff has not articulated why a defense of the claims against Stapleton would be inconsistent with Paducah Gear's defense of the claims alleged against it.

We reject the plaintiff's contention that this case is governed by our decision in *Rowen v. LeMars Mutual Insurance Co.*, 230 N.W.2d 905 (Iowa 1975). In *Rowen,* policyholders of LeMars filed a derivative action against various officers and directors of LeMars, naming LeMars as a nominal defendant. 230 N.W.2d at 907. The plaintiffs also sued Iowa Mutual Insurance Company of DeWitt (DeWitt) as well as corporate insiders of DeWitt. *Id.* While the case was on appeal, the plaintiffs filed a motion to disqualify counsel for some of the individual defendants from

also representing the two insurance companies. *Id.* This motion as it pertained to LeMars was "grounded on the principle that in a derivative action the corporation, though a nominal defendant, is the real plaintiff in interest and beneficiary of any judgment recovered." *Id.* at 913. Even though there was no derivative action filed for the benefit of DeWitt, the plaintiffs argued "that under the allegations of the petition DeWitt would have an action over against [the] officers and directors of DeWitt [who] participated in the wrongdoing," and therefore, DeWitt was in a potentially antagonistic position with respect to the individual defendants. *Id.* Noting that even a potential conflict of interest was sufficient to warrant disqualification, this court granted the plaintiffs' motion. *Id.* at 914–15.

Clearly, Paducah Gear is not in a position comparable to LeMars. LeMars, a nominal defendant, was the anticipated beneficiary of any recovery from the other defendants. Thus, the interest of LeMars was directly adverse to those of the other defendants. Here, however, Paducah Gear is a true defendant; plaintiff seeks no relief from Stapleton that will inure to Paducah Gear. We are convinced the defendants' attorneys are not disqualified from representing both defendants simply because the plaintiff has asserted separate claims against these defendants. *See Stanley v. Brassfield, Cowan & Howard,* 152 Ill.App.3d 378, 105 Ill.Dec. 442, 504 N.E.2d 542, 543–44 (1987) (refusing to disqualify attorneys representing corporation and individual shareholders and directors where action sought recovery *from* corporation, not *for* corporation, distinguishing derivative suits in which disqualification would be required).

Bottoms' argument is actually similar to that made by the plaintiffs in *Rowen* with respect to DeWitt, namely, that DeWitt may have a cross-claim against the individual defendants. Bottoms argued in the district court that Paducah Gear had a duty to its employees and owners to investigate the claims of personal wrongdoing made against Stapleton to determine the merits of those claims. The implication from this argument was that if there was any merit to the claims, Paducah Gear may have a cross-claim against Stapleton. The only problem with analogizing Paducah Gear to DeWitt is the differing standard applied in *Rowen* and that applicable here. In *Rowen* the mere potential for differing interests triggered disqualification. Under rule 32:1.7(a)(2), there must be some likelihood of differing interests. *See* Iowa R. of Prof'l Conduct 32:1.7 cmt. [8].

Bottoms, as the moving party, bore the burden of proving facts that established the necessary factual prerequisite for disqualification. *See Richers v. Marsh & McLennan Group Assocs.,* 459 N.W.2d 478, 481 (Iowa 1990); *Quality Developers, Inc. v. Thorman,* 29 Kan.App.2d 702, 31 P.3d 296, 304 (2001). Our review of the record does not reveal substantial *evidence* that the defendants' interests will likely become adverse, particularly given the fact that one defendant is a limited liability company and the other defendant holds the controlling interest in the company. *Cf. Philips Med. Sys. Int'l B.V. v. Bruetman,* 8 F.3d 600, 606 (7th Cir.1993) (refusing to disqualify counsel jointly representing individual defendant and several corporations that he controlled, noting it appeared "the corporations have no interests separate from [the individual defendant]" and "[n]o determination of an actual conflict of interest was ever made"); *Field v. Freedman,* 527 F.Supp. 935, 940 (D.Kan. 1981) (refusing to disqualify attorneys representing defunct corporation and majority shareholders in suit filed by minority

shareholder). Counsel will not be disqualified simply because the opposing party *alleges* the *possibility* of differing interests. *See Nat'l Child Care, Inc. v. Dickinson,* 446 N.W.2d 810, 812 (Iowa 1989) (holding movant's allegation of conflict was insufficient to require disqualification in absence of proof that attorney's testimony would be adverse to client's interests); *accord Philips Med. Sys. Int'l B.V.,* 8 F.3d at 606 (stating "judge should have held a hearing to determine whether there were adverse interests"); *Field,* 527 F.Supp. at 940–41 (denying motion to disqualify defendants' counsel because the plaintiff "made no record which would allow [a finding] that ... adverse interests are present or are likely to become present," noting "there must be some facts in the record to enable the Court to make a finding that an ethical violation has or will occur").

Although we hold disqualification of the defendants' attorneys from dual representation is not mandated at this time, we make no determination that a divergence of interest may not in the future become sufficiently likely so as to warrant disqualification. Thus, the plaintiff is not precluded from reasserting its motion to disqualify if it has proof that the test set forth in rule 32:1.7(a) has been met. *See generally* Iowa R. of Prof'l Conduct 32:3.1 (stating "[a] lawyer shall not ... assert ... an issue ... unless there is a basis in law and fact for doing so that is not frivolous"). Without prejudging what lies ahead, we simply observe that the defendants' attorneys should be mindful of their ethical obligations under rules 32:1.13 and 32:1.7 and their clients' interest in having consistent and continuing representation in this lawsuit. *See generally* Iowa R. of Prof'l Conduct 32:1.7 cmt. [29] (stating "a lawyer should be mindful that if the common representation fails because the potentially adverse interests cannot be reconciled, the result can be additional cost, embarrassment, and recrimination" and that "[o]rdinarily, the lawyer will be forced to withdraw from representing all of the clients if the common representation fails").

## III. *Conclusion and Disposition.*

The plaintiff failed to produce evidence showing it is likely that a difference in interests will develop between the defendants. Therefore, the trial court's finding of a significant potential for a divergence of interests is not supported by substantial evidence. Accordingly, the court's disqualification of the defendants' attorneys was an abuse of discretion. Although the potential for divergent interests exists, we will not deprive the defendants of their counsel of choice based solely on the plaintiff's allegations that the company may have a claim against the majority shareholder, particularly when this lawsuit is based solely on wrongdoing that has purportedly harmed the *plaintiff's* ownership interests. We reverse the district court's ruling disqualifying Sullivan & Ward and the Belin law firm from representing Paducah Gear, and we remand this case for further proceedings.

**REVERSED AND REMANDED.**