# IN THE SUPREME COURT OF IOWA

No. 13–0702

Filed January 9, 2015
Amended March 17, 2015

**STATE OF IOWA,**

Appellee,

vs.

**BEAU JACKSON MORRIS,**

Appellant.

Appeal from the Iowa District Court for Polk County, Christopher L. McDonald, Judge.

Inmate appeals rescission by the district court of prior order increasing restitution payments deducted from his prison earnings. **REVERSED.**

Beau Morris, Clarinda, pro se.

Thomas J. Miller, Attorney General, Kevin R. Cmelik and William A. Hill, Assistant Attorneys General, and John P. Sarcone, County Attorney, for appellee.

**CADY, Chief Justice.**

In this appeal, a prison inmate challenges a decision of the district court to rescind its prior order that increased the amount of restitution deducted from his prison earnings. In deciding this case, we must interpret Iowa Code section 904.809(5) (2013) governing deductions from earnings by inmates employed by private industry. On our review, we reverse the order of the district court.

## I. Background Facts and Prior Proceedings.

Beau Morris was convicted of first-degree robbery and second-degree sexual assault in 2004. He was sentenced by the district court to two consecutive twenty-five-year terms of incarceration. The district court also ordered him to pay restitution in an amount in excess of $16,000. Initially, Morris was required to pay twenty percent of all credits to his institutional account as restitution. This order was later modified to fifteen percent of his income.

In 2011, Morris began working for a private employer through the Iowa Prison Industries program. He was paid a wage in excess of $10 per hour for the work he performed. This employment allowed him to earn significantly more than he was paid for performing labor for the prison. Morris signed a work agreement as part of his application for employment with Iowa Prison Industries. Under the agreement, Morris agreed that fifteen percent of his gross wages would be deducted for restitution, "unless otherwise specified."[1]

_____

[1]The complete work agreement follows:

I hereby agree voluntarily to participate in the Federal Prison Industry Enhancement Act (PIE) project. Section 904.809 of the Code of Iowa. I further agree to the deductions listed in items 1, 2, 3, 4, and 5 below made from gross wages, unless otherwise specified, as well as to all other financial arrangements made as to earned Federal Prison Industry

Enhancement Act (PIE) wages. I will not initiate, acquiesce, or agree to any attempt to have my wages garnished or executed upon by any party prior to the distribution of such wages pursuant to Section 904.809 Iowa Code (2007). Any deviation from this agreement, or change in deductions without written notification from the Department of Corrections is prohibited and will result in suspension or termination, additionally the offenders will be assessed reasonable Attorneys General fees for resolving any changes or attempts to modify this agreement.

If I am offered and accept employment by H & H Trailer, I agree to the following.

1. Deductions will be made from my wages to be distributed as follows:

    A. Payroll deductions as required by law, which may include but are not limited to state and federal income taxes and social security assessments. You are allowed one (1) deduction unless you can produce a certified document for additional deductions.

    B. An amount legally obligated to pay by court order for the support of dependents being child support or family support. If a court order does not exist dependent support will not be taken.

    C. Twenty percent (20%) of gross wages deposited to my inmate account. Of the 20% of gross wages deposited to my inmate account the following, IF IT APPLIES, will be deducted from my inmate account; 20% to federal restitution and 10% to savings up to a maximum of $100. IF IT APPLIES, deductions for state and federal court filing fees and DOC sanctions will be taken from the remaining amount deposited to my inmate account.

    D. Five percent (5%) of gross wages deducted for the victim compensation fund.

    E. Fifteen percent (15%) of gross wages deducted for state restitution. If restitution does not exist, no amount will be taken.

    F. Any amount left above the deductions will go the General Fund as provided for in the Code of Iowa.

2. I understand and agree that Workman's Compensation while so employed is not a responsibility of H & H Trailers and will apply according to section 85.59, Code of Iowa.

3. I understand and agree that I am not eligible for unemployment while employed as an inmate, and that my employer will not report my wages to the State for unemployment, and according[ly] execute an Iowa Short Form Power of Attorney.

4. If employed under PIE, I hereby constitute and appoint the Director of Corrections or his/her designee my true and lawful agent and attorney in fact with respect to the receipt, disbursement, and custody of the wages arising from my employment, and accordingly execute an Iowa Short Form Power of Attorney.

On July 30, 2012, Morris petitioned the district court to modify the restitution plan to allow him to pay a greater amount for restitution from his private-employment earnings. He requested that fifty percent of his earnings be paid as restitution. The district court granted the request and ordered the Iowa Department of Corrections (DOC) to increase the restitution deduction to fifty percent on August 15, 2012.

The DOC did not immediately comply with the order and eventually filed a motion with the district court requesting that it be rescinded. The district court, under a different presiding judge, granted the motion and rescinded the prior order modifying restitution. The court rejected the State's argument that federal law limited the total restitution deduction amounts to twenty percent, but held that the modified restitution order violated the state statutory scheme for the distribution of inmate earnings from private-sector employment. The district court reinstated the prior restitution plan that set the amount of restitution at fifteen percent of his earnings. The district court declined to address the additional claim made by the State that the employment agreement executed by Morris precluded any modification of restitution.

Morris appealed. He raises two issues. First, Morris claims the district court abused its discretion by rescinding the modified restitution order. Second, he claims the employment agreement did not preclude a modification of restitution. The State argues the district court properly

---

5. I will only perform the duties assigned to me by the company and will not operate any equipment that the company has not trained or certified me to operate. I will also follow all applicable policies, procedures and safety regulations as described by the company.

I have read and understand the forgoing, and if employed, I agree to abide by the guidelines set out above. I understand that my employment is "at will" and that I am not guaranteed my employment will have any specific duration.

rescinded the modified restitution order and asserts the issue of whether the modified restitution order violated the employment agreement was not properly before the court in this appeal.

## II.  Standard of Review.

Our review of a restitution order is for abuse of discretion. " 'Abuse of discretion may be shown where . . . the court's . . . decision is grounded on reasons that are clearly untenable or unreasonable.' " *Office of Citizens' Aide/Ombudsman v. Edwards*, 825 N.W.2d 8, 14 (Iowa 2012) (quoting *Citizens' Aide/Ombudsman v. Grossheim*, 498 N.W.2d 405, 407 (Iowa 1993)).  "A ground or reason is untenable . . . when it is based on an erroneous application of the law."  *Id.* (citation and internal quotation marks omitted); *accord Bottoms v. Stapleton*, 706 N.W.2d 411, 415 (Iowa 2005) ("A court abuses its discretion when its ruling is based on clearly untenable grounds, such as reliance upon an improper legal standard or error in the application of the law.").  "When reviewing a restitution order, 'we determine whether the court's findings lack substantial evidentiary support, or whether the court has not properly applied the law.' "  *State v. Klawonn*, 688 N.W.2d 271, 274 (Iowa 2004) (quoting *State v. Bonstetter*, 637 N.W.2d 161, 165 (Iowa 2001)). Statutory construction is reviewed for correction of errors at law.  *State v. Dudley*, 766 N.W.2d 606, 612 (Iowa 2009).

## III.  Discussion.

The resolution of this case requires us to consider the private-employment program for inmates in Iowa prisons.  While prison inmates have historically earned very meager wages for performing labor while in prison, private employment opportunities for inmates now offer jobs that pay substantially higher wages.  *See* Iowa Code § 904.809(1)(*c*); Noah D. Zatz, *Working at the Boundaries of Markets: Prison Labor and the*

*Economic Dimension of Employment Relationships*, 61 Vand. L. Rev. 857, 870–71 & n.49 (2008) [hereinafter Zatz]. However, inmates are only permitted to receive a portion of the wages paid. Iowa Code § 904.809(5)(*b*)–(*c*). Most of the earnings are distributed to other entities designated by statute pursuant to a declared statutory priority scheme. *Id.* § 904.809(5). Under this distribution scheme, the amount distributed to a recipient with priority over another recipient can reduce the amount ultimately distributed to the lower-priority recipient. *See id.* In this case, the State challenged the authority of the district court to modify a restitution order that increased the statutory distribution of an inmate's earnings for restitution because it resulted in a decrease in the statutory distribution of the inmate's earnings to the DOC as reimbursement for supervision costs of private-employment programs and to the general fund of the state as reimbursement for the costs of incarceration. We first review the private-employment program to shed light on the resolution of this case.

Congress authorized the Prison Industry Enhancement Certification Program as part of the Justice System Improvement Act of 1979. Pub. L. No. 96-157, § 827, 93 Stat. 1167, 1215 (codified at 18 U.S.C. § 1761(c) (1982)). Generally, this program joined private industry with prison industry by exempting qualified correctional systems from the existing legislative restrictions on the interstate transportation and sale of prison goods and generally allowing the unrestricted sales of goods produced by inmates. *See* James J. Misrahi, Note, *Factories with Fences: An Analysis of the Prison Industry Enhancement Certification Program in Historical Perspective*, 33 Am. Crim. L. Rev. 411, 412 (1996). The program, among other things, established a minimum wage and authorized deductions of up to eighty percent of the inmate's wages for

taxes, room and board, support, and victim compensation funds. *Id.* at 412–13. The program was originally authorized in only five states, but has expanded to include over forty participating jurisdictions, including Iowa. Zatz, 61 Vand. L. Rev. at 869 n.37; *see also* Prison Industry Enhancement Certification Program Guideline, 64 Fed. Reg. 17,000, 17,002 (Apr. 7, 1999).

The Iowa legislature established the Iowa State Industries program in 1977.[2] 1977 Iowa Acts ch. 87 (codified at Iowa Code ch. 216 (1979)). The private prison industry program in Iowa is codified in Iowa Code section 904.809 (2013). This section establishes the conditions for private industry employment by inmates of correctional institutions in Iowa and includes provisions relating to the specific deductions from the earnings of inmates.[3] *Id.* Overall, the total earnings of inmates, less the employee deductions for taxes and other payroll deductions, are surrendered to the DOC, which then identifies the deductions pursuant to the statutory scheme contained in section 904.809(5)(*b*). *Id.* § 904.809(5). Under this scheme, an inmate's gross payroll earnings are distributed as follows:

> (1) Twenty percent, to be deposited in the inmate's general account.
>
> (2) All required tax deductions, to be collected by the inmate's employer.

---

[2]In 1989, Iowa became part of the Federal Prison Industry Enhancement Certification Program. *See* Nat'l Corr. Indus. Ass'n, *Prison Industry Enhancement Certification Program Certification & Cost Accounting Center Listing* 11 (2014), *available at* http://www.nationalcia.org/wp-content/uploads/Quarter-2-2014-Certification-Listing.pdf.

[3]The deductions were originally established in 1997 Iowa Acts ch. 190, § 6 (codified at Iowa Code § 904.809(5) (1999)). The order of deductions was modified by 1999 Iowa Acts ch. 182, § 6 (codified at Iowa Code § 904.809(5) (2001)), and the final alteration adding the department of corrections staff supervision deduction was added by 2004 Iowa Acts ch. 1175, § 203 (codified at Iowa Code § 904.809(5)(*c*)(3) (2005)).

   (3) Five percent, to be deducted for the victim compensation fund created in section 915.94.

*Id.* § 904.809(5)(*b*).

  After these deductions are made, the remaining balance is distributed pursuant to a separate priority scheme. *Id.* § 904.809(5)(*c*). First, any dependent support obligation of the inmate is deducted from the remaining balance. *Id.* Up to a maximum of fifty percent of the inmate's net earnings can be deducted for monthly spousal and child support obligations, as well as any amount for delinquent child support. *Id.* From the remaining funds after this priority is satisfied, an amount is deducted for any restitution ordered by the court pursuant to an offender plan of restitution. *Id.* § 904.809(5)(*c*)(2). If funds remain after the restitution order is satisfied, the DOC may retain up to fifty percent of this balance. *Id.* § 904.809(5)(*c*)(3). The purpose of this deduction is to reimburse the DOC for the staff supervision costs of private-sector employment of inmates. *See id.* Finally, any funds that might remain after this deduction are deposited in the general fund of the state. *Id.* § 904.809(5)(*c*)(4). The purpose of this deduction is to reimburse the state for the costs of the inmate's incarceration.

  The statute is clear and unambiguous. Specifically, it means that restitution pursuant to a plan established by the court takes priority over any amounts that may be retained by the DOC or deposited in the general fund of the state. There is no dispute under the statute that restitution trumps funding for the DOC, just as dependent support orders trump restitution plans. Additionally, funds are paid out under the statute after the three required payments identified in section 904.809(5)(*b*) only to the extent that the greater priority deductions established by the legislature have been satisfied.

Thus, we turn to the specific dispute before us in this case. The district court rescinded its prior order that modified restitution after it determined the modified terms of restitution were contrary to the statutory scheme prioritizing the distribution of earnings. It held the modified restitution order altered the statutory distribution scheme by making restitution the first deduction.

In deciding whether the order to rescind the modified restitution was based on an erroneous application of law, it is important to recognize that the modified restitution order only increased the amount of restitution from fifteen percent of earnings to fifty percent of earnings. This modification did not address the issue of priority in any way and expressed no intent for restitution to be elevated to the first deduction in violation of the statute. The prior restitution plan, which was reinstated by the district court when it rescinded the modified order, directed fifteen percent of wages to be paid, and the modified order only increased the percentage of payment. A district court is authorized to modify restitution payments. *See id.* § 910.7(2).[4] Additionally, the statutory

---

[4]Authority to modify an offender's restitution payment plan is governed by the Iowa Code. *See* Iowa Code § 910.4(2)(*d*) (requiring court approval for modification when offender is on probation); *id.* § 910.5(1)(*d*) (permitting the director of the DOC or director's designee to modify the plan of payment to reflect the offender's present circumstances when incarcerated); *id.* § 910.5(2)(*a*) (permitting the chief of the bureau of community correctional services to modify payment plans for those on work release); *id.* § 910.5(3)(*a*) (permitting the office or individual in charge of supervising an offender on work release to modify the plan); *id.* § 910.5(4)(*a*) (permitting the district department of correctional services to prepare and modify a parolee's payment plan); *see also id.* § 910.2 (regarding restitution or community service ordered by sentencing court). Notwithstanding the delegations to prepare and modify restitution payment plans, section 910.7 gives the trial court authority to modify the restitution plan and restitution payment plan of an inmate, parolee, or probationer when petitioned either by the offender or by the office or individual preparing the plan. *See id.* § 910.7(1)–(2).

When preparing or modifying an offender's restitution payment plan, the individual or office preparing it is to "tak[e] into consideration the offender's income, physical and mental health, age, education, employment and family circumstances," *id.* § 910.4(2), with modification occurring "[w]hen there is a significant change in the

scheme for wage deductions for inmates in the prison industry program does not limit the percent of net earnings that can be deducted for restitution. *See id.* § 904.809(5)(*c*)(2); *see also* Iowa Admin. Code r. 201—20.11(7) (limiting restitution deductions to fifty percent of credits to offender's account).

It is also important to recognize that Morris did not have any deductions for dependent support. As a result, the only deductions higher in priority than restitution were the statutorily required twenty percent to his inmate account, taxes, and the five percent deduction for the victim restitution fund. Accordingly, the modified restitution order was not contrary to the distribution scheme for inmate private-sector employment under the statute. The modified restitution order did not alter any of the categories of distribution with a greater priority under the statute, but merely increased the amount distributed for restitution, which left a lesser amount for the DOC and the state's general fund. *See* Iowa Code § 904.809(5)(*c*)(3)–(4). However, this result is a consequence of the judgment of our legislature to compensate victims of crimes and other recipients of restitution before permitting the DOC to be reimbursed for its costs of supervising the private-sector employment of inmates and the state to be reimbursed for the costs of incarceration.

This analysis reveals that the decision by the district court to rescind the amended restitution order was based on reasoning that constituted legal error. Contrary to the reasoning of the district court in the rescission hearing, the amended restitution order was not contrary to the governing statutory scheme. While the district court had discretion

offender's income or circumstances," *id.* § 910.4(2)(*d*); *accord id.* § 910.5(1)(*d*)(1), (2)(*a*)(1), (3)(*a*)(1), (4)(*a*)(1).

to amend the restitution order and rescind or modify the amended order, it had no discretion to rescind the amended order based on legal error. *See Bottoms*, 706 N.W.2d at 415.

We have discretion to affirm the district court on grounds raised at trial but not on appeal. *See King v. State*, 818 N.W.2d 1, 11 (Iowa 2012). However, we decline to do so in this case by considering whether the decision of the district court can be affirmed on the ground that the modified restitution order was contrary to the employment agreement. The State affirmatively elected not to pursue this issue, and there is no underlying supporting record. Under the circumstances, we consider the issue waived on appeal.

Accordingly, the district court order rescinding the modified restitution order was an abuse of discretion. We reverse the district court decision to rescind the modified restitution order without prejudice to the State to seek further modification of Morris's restitution.

**IV. Conclusion.**

We reverse the decision of the district court.

**REVERSED.**