# IN THE SUPREME COURT OF IOWA

No. 14–1860

Filed May 13, 2016

Amended August 18, 2016

**NUSTAR FARMS, LLC,**

Appellee,

vs.

**ROBERT ZYLSTRA** and **MARCIA ZYLSTRA,**

Appellants.

---

Appeal from the Iowa District Court for Osceola County, Don E. Courtney, Judge.

Former clients of an attorney moved to disqualify him as counsel in an action against them. The district court denied the motion for disqualification. **DISTRICT COURT JUDGMENT REVERSED AND CASE REMANDED.**

Matthew G. Sease of Kemp & Sease, Des Moines, Randall G. Sease of Sease Law Firm, Hartley, and John L. Sandy of Sandy Law Firm, Spirit Lake, for appellants.

Larry A. Stoller of Stoller Law Office, Spirit Lake, for appellee.

Shaun Thompson, Forest City, for amicus curiae Wooge Pumping LC.

**ZAGER, Justice.**

In this interlocutory appeal, we are asked to decide whether an attorney should be disqualified from representing one party in a lawsuit, either because his representation of the two parties was concurrent or because he had previously represented the opposing party in a similar matter. The district court concluded that the attorney need not be disqualified. For the reasons stated below, we conclude that the district court did not abuse its discretion in concluding that the prior attorney–client relationship failed the "substantial relationship" test. However, we conclude that the attorney did have a concurrent conflict of interest. Therefore, we find the district court abused its discretion in not disqualifying the attorney.

## I. Background Facts and Proceedings.

Attorney Larry Stoller began representing Robert and Marcia Zylstra in 2002.[1] Stoller represented them in a number of legal matters between 2002 and 2014, including financial issues, business acquisitions, and real estate transactions.[2] Although the Zylstras were represented by Stoller on a number of occasions, they also used the services of other attorneys throughout this time period. At issue for the purposes of this case are a meeting in January 2007 and a small claims case ending in 2014.

---

[1]During the hearing in the district court, Robert testified that Stoller began representing him as early as 1999. Stoller provided files indicating that his representation began in 2002. When questioned, Robert testified he had no reason to dispute this start date.

[2]In his affidavit to the district court, Robert alleged that Stoller represented him when he sold a dairy farm to NuStar Farms, LLC. Stoller introduced evidence that it was Sibley Dairy, LLP, rather than Robert who sold its assets to NuStar. The documents of the sale also reflect that Sibley Dairy was represented by Daniel DeKoster and NuStar was represented by Christopher Sackett. The district court found Robert's allegation not credible.

On January 24, 2007, Robert met with Stoller to discuss estate planning and manure easement agreements. At the time of the meeting, the Zylstras were shareholders in Sibley Dairy, LLP. During this meeting, Robert showed Stoller a multipage document containing multiple manure easement agreements that the Zylstras intended to enter into with NuStar Farms, LLC (NuStar). The parties disagree as to the extent of Stoller's involvement during this meeting regarding the manure easement agreements. Stoller asserts that he only briefly glanced at the easement agreements and then advised Robert that he should seek the advice of another attorney. Although Stoller acknowledges he made notations on the first page of the document, he argues that the notations do not indicate he read the entirety of the multipage manure easement agreements. Robert asserts that he asked Stoller to review the manure easement agreements and provide advice. Robert further alleges that Stoller examined the agreements during the meeting and advised him to go ahead and complete and sign them.

The record reflects that Stoller made notations on the documents. However, Stoller claims the notations were made at Robert's request to help Robert remember what to discuss with one of the attorneys that Stoller suggested Robert contact. Both parties agree that Stoller suggested Robert find an attorney with more experience in the area of manure easements. Stoller sent a follow-up email to Robert with two attorney references who he thought could assist the Zylstras with the easements. The email also confirmed that Robert asked Stoller to look at the easements and that Stoller "briefly looked at them." Further, Stoller wrote, "The changes you were talking about should be run by [the other attorney] and I suggest that if approved they be included in the easements. I would also think that some permit would be necessary."

The record also reflects that during this conference they discussed estate planning matters. This is confirmed in the follow-up email and Stoller's office notes of the conference. Stoller billed the Zylstras for 1.20 hours and described the meeting as, "Conference with Robert on manure easement; review easements and agreement." There is nothing in the record to indicate that Stoller represented the Zylstras when they executed the manure easement agreements with NuStar or that he had any further involvement in the sale of Sibley Dairy.

Stoller continued to represent the Zylstras in a number of other legal matters between 2007 and 2014. In December 2013, Stoller began representing the Zylstras in a small claims matter. The case was submitted to the small claims court on February 10, 2014, but the court did not issue its ruling until May 30. Stoller began representing NuStar in early May in an action regarding loan covenants. Also in early May, Stoller began contacting the Zylstras on behalf of NuStar. At least part of these contacts involved the Zylstras' failure to provide NuStar with a deed to property involving ingress. Stoller acknowledges that he contacted Robert about the Zylstras' need to sign the deed. On May 13, Stoller sent the Zylstras an email that stated it was the third time he had contacted them about the deed to ingress property sold by the Zylstras to NuStar. Stoller wrote in the email,

> I must now put you on formal notice that if the signed deed is not received by my office by the close of business on Wednesday, May 14, 2014, that I will need to pursue the appropriate remedies for specific performance and damages on behalf of Nustar.

Stoller also wrote in his email, "I have tried to remain neutral in those matters and advised both parties that I could represent neither."

In this same email, Stoller informed the Zylstras that he would no longer be representing them in any future matters. Robert acknowledges that he understood the May 13 email as a severance of the attorney–client relationship. Stoller emailed the Zylstras again on May 14, expressing disappointment that the Zylstras were not going to sign the deed. Stoller also reminded Robert of his prior financial situation and how Stoller had helped him in the past.

By May 15, the Zylstras had retained John Sandy to represent them in their dealings with NuStar. In Sandy's correspondence to Stoller that same day, he alerted Stoller that the Zylstras found his representation of NuStar to be a conflict of interest based on his prior legal representation and counsel provided to the Zylstras. Sandy specifically requested that Stoller cease further representation of NuStar when those interests conflicted with the Zylstras.

On June 5, Stoller sent the Zylstras a letter notifying them of the judge's ruling in the small claims case and informing them that he believed the decision was appealable. Stoller further notified the Zylstras of their rights to appeal and the deadlines associated with such an appeal. Stoller wrote he would be willing to file an appeal on their behalf and included information about his retainer and billing rate. Stoller also advised the Zylstras that if they chose to have another attorney represent them on the appeal he would release their file to that attorney.

On July 9, Stoller filed a multicount petition on behalf of NuStar against the Zylstras. The petition alleged the Zylstras agreed to sell NuStar a parcel in farmland in 2008, but they failed to tender the requisite deed. One count of the petition also alleged the Zylstras did not abide by certain terms contained in the manure easement agreements. In response, the Zylstras filed a preanswer motion to dismiss based on

statute of limitations grounds. They also filed a motion seeking to disqualify Stoller as the attorney for NuStar based on a conflict of interest.[3]

On August 8, the district court held a hearing, and the parties argued both the motion to dismiss and the motion to disqualify Stoller.[4] On October 14, the district court denied both motions.[5] On November 10, the Zylstras filed an application for interlocutory appeal seeking review of the district court's denial of their motion to disqualify Stoller. We granted the application for interlocutory appeal on December 5.

## II. Standard of Review.

We evaluate the district court's decision regarding attorney disqualification for an abuse of discretion. *Bottoms v. Stapleton*, 706 N.W.2d 411, 414 (Iowa 2005). A district court "abuses its discretion when its ruling is based on clearly untenable grounds." *Id.* at 415. A ground is clearly untenable when the court relies on an improper legal standard or applies the law in error. *Id.* A district court's "factual findings in disqualifications will not be disturbed on appeal if they are supported by substantial evidence." *Id.* (quoting *Killian v. Iowa Dist. Ct.*, 452 N.W.2d 426, 428–29 (Iowa 1990)). The party moving for an

---

[3]In addition to the motion in district court to disqualify Stoller, the Zylstras filed a complaint with the Iowa Supreme Court Attorney Disciplinary Board. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Stoller*, 879 N.W.2d 199, 205 (2016).

[4]While the district court's decision was still pending, Stoller, on behalf of NuStar, filed an application for default judgment. The court entered the default judgment against the Zylstras, but later granted the Zylstras' motion to set aside the default judgment.

[5]Following the ruling, the Zylstras filed an answer, counterclaim, third-party claim, and a number of motions. None of these motions are relevant to the appeal at hand which deals solely with Stoller's representation of NuStar.

attorney's disqualification bears the burden of proving the facts necessary to establish the disqualification is proper. *Id.* at 418.

### III. Analysis.

> The right of a party to choose his or her own attorney is important, but it must be balanced against the need to maintain "the highest ethical standards" that will preserve the public's trust in the bar and in the integrity of the court system.

*Id.* at 415 (quoting *Killian*, 452 N.W.2d at 430). A court must necessarily balance these two competing interests when determining whether to disqualify an attorney. *See id.* In doing so, the court "must also be vigilant to thwart any misuse of a motion to disqualify for strategic reasons." *Id.* When we evaluate motions to disqualify an attorney, we use our Iowa Rules of Professional Conduct as the starting point. *Id.*

**A. Rule 32:1.7—Conflict of Interest.** Rule 32:1.7 covers concurrent conflicts of interest and states in pertinent part,

> (a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:

> (1) the representation of one client will be directly adverse to another client; or

> (2) there is significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client, or a third person by a personal interest of the lawyer.

Iowa R. Prof'l Conduct 32:1.7(a). The rule goes on to state that a lawyer may continue with the representation of a client if certain stipulations are met, one of which is that each client gives informed, written consent. *Id.* r. 32:1.7(b).

The Zylstras allege that Stoller's representation of NuStar was a concurrent conflict of interest with his representation of them. They

argue that he began the action on behalf of NuStar in early May, while knowing that the representation would be adverse to the Zylstras because it involved a deed between the two parties. Further, Stoller began contacting the Zylstras on behalf of NuStar before the May 13 email officially terminating his attorney–client relationship with the Zylstras on the small claims case. Stoller responds that there was no concurrent conflict of interest because he did not file the action on behalf of NuStar against the Zylstras until after the May 13 email terminating the attorney–client relationship. In the alternative, the Zylstras argue that Stoller's June 5 email indicates that he was continuing to represent them in the small claims matter until the court issued its ruling. Even thereafter, Stoller advised the Zylstras there was a basis to appeal the judgment, the time for perfecting such an appeal, and his willingness to continue representing them in the appeal. Stoller contends that it was his duty to inform the Zylstras, as his former clients, of the outcome of the small claims hearing and the time limits for appeal. He further contends that, although he said he would be willing to represent the Zylstras on the appeal, he was also recommending they find alternate representation and thus was only informing them of their options if they chose to go forward with an appeal.

Before we turn to an analysis of whether a concurrent conflict of interest exists, we must address two questions: when the attorney–client relationship between the Zylstras and Stoller ended, and when the attorney–client relationship between NuStar and Stoller began. The first question we may dispose of easily. Generally, a lawyer's representation of a client extends until the time period for motions or appeals expires in a civil action. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Marks*, 814 N.W.2d 532, 538 (Iowa 2012). However, both the attorney and the client

may terminate the relationship prior to this natural ending. *See id.* at 539. Both Stoller and the Zylstras agree that the attorney–client relationship was terminated with the May 13 email. Further, while Stoller did offer to represent the Zylstras on the appeal, the Zylstras did not actually appeal the small claims case and did not solicit Stoller's services on any other legal matters. We find that the attorney–client relationship between Stoller and the Zylstras ended with the May 13 email.

The next question we must address is when the attorney–client relationship between Stoller and NuStar began. The attorney–client relationship is governed by general contract principles. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Blessum*, 861 N.W.2d 575, 588 (Iowa 2015). It may be either express, such as when representation is based on a written agreement, or implied by the conduct of the parties. *Id.* There are three elements that must be met to find that an attorney–client relationship has been established:

> (1) a person sought advice or assistance from an attorney, (2) the advice or assistance sought pertained to matters within the attorney's professional competence, and (3) the attorney expressly or impliedly agreed to give or actually gave the desired advice or assistance.

*Id.* (quoting *Comm. on Prof'l Ethics & Conduct v. Wunschel*, 461 N.W.2d 840, 845 (Iowa 1990)). The relationship between Stoller and NuStar clearly meets this test. NuStar sought advice from Stoller at least beginning in early May about the action that required a deed from the Zylstras. The advice they sought from Stoller pertained to matters within his professional ability. Stoller has practiced law for a number of years and across a number of areas. Last, Stoller both agreed to give and actually gave NuStar advice and assistance. On NuStar's behalf, Stoller

began contacting the Zylstras regarding the deed that NuStar was demanding. We find that the attorney–client relationship between NuStar and Stoller began, at the latest, in early May. This is also confirmed by Stoller's correspondence with the Zylstras on May 13 in which he asserts that it was the third time he had contacted them in regard to the deed. We now turn to a discussion of whether this attorney–client relationship involved a concurrent conflict of interest that violates rule 32:1.7. *See* Iowa R. Prof'l Conduct 32:1.7(a).

There are two ways for a concurrent conflict of interest to exist under rule 32:1.7. *Id.* The first is if "the representation of one client will be directly adverse to another client." *Id.* r. 32:1.7(a)(1). The second is if "there is a significant risk that the representation . . . will be materially limited by the lawyer's responsibilities to another client, a former client, or a third person . . . ." *Id.* r. 32:1.7(a)(2). We may find a concurrent conflict of interest under either situation.

We have acknowledged that rule 32:1.7(a) "applies where *directly* adverse representation *will* take place, as when one current client is about to file suit against another current client." 1 Geoffrey C. Hazard, Jr. & W. William Hodes, *The Law of Lawyering* § 11.8, at 11-22 (3d ed. 2004 Supp.); *accord Bottoms*, 706 N.W.2d at 416. The comments to the rule expand on what a "directly adverse" action may be:

> Loyalty to a current client prohibits undertaking representation directly adverse to that client without that client's informed consent. Thus, absent consent, a lawyer may not act as an advocate in one matter against a person the lawyer represents in some other matter, even when the matters are wholly unrelated.

Iowa R. Prof'l Conduct 32:1.7 cmt. 6.

Stoller acknowledged in a letter to the Iowa Supreme Court Attorney Disciplinary Board that he began the representation of NuStar

in early May and that the Zylstras were aware of his representation of NuStar. It is unclear from the record at what point Stoller realized the action would include the deed that NuStar wanted the Zylstras to sign. However, by the time Stoller sent the May 13 email, he was already contemplating taking action against the Zylstras on behalf of NuStar. The email stated,

> I must now put you on formal notice that if the signed deed is not received by my office by the close of business on Wednesday, May 14, 2014, that I will need to pursue the appropriate remedies for specific performance and damages on behalf of Nustar.

In this email, Stoller clearly demonstrates the intent to pursue a future, adverse action against the Zylstras on behalf of NuStar. Although Stoller terminated the attorney–client relationship with the Zylstras in the same email, the intent to pursue legal action unless the Zylstras complied with NuStar's request to sign the deed arose before the email was sent—which is precisely why the demand or "formal notice" language is included. We find that Stoller's representation of NuStar was a directly adverse concurrent conflict of interest. Because Stoller did not properly obtain consent from the Zylstras to represent NuStar, his actions fall squarely within the guidance of the comments that "absent consent, a lawyer may not act as an advocate in one matter against a person the lawyer represents in some other matter, even when the matters are wholly unrelated." Iowa R. Prof'l Conduct 32:1.7 cmt. 6. Thus, we find Stoller should be disqualified from representing NuStar in the action against the Zylstras. Because the district court applied the law in error, we find that it abused its discretion in concluding that Stoller should not be disqualified. *See Bottoms*, 706 N.W.2d at 415.

**B. Rule 32:1.9(a)—Duties to Former Clients.** Stoller argues that, even though there was a concurrent conflict of interest in the past, the conflict no longer exists because he severed the attorney–client relationship, and therefore he can continue to represent NuStar in the current action against the Zylstras. Rule 32:1.9(a) concerns a lawyer's duties to former clients. In pertinent part, it provides,

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

Iowa R. Prof'l Conduct 32:1.9(a). The comments expand on what makes a matter "substantially related" for purposes of the rule. *See id.* r. 32:1.9 cmt. 3. A matter is substantially related if it involves the same transaction or legal dispute. *Id.* If there is "a substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter," then the matter is substantially related. *Id.*

We consider three factors when we determine whether a substantial relationship exists:

> (1) the nature and scope of the prior representation; (2) the nature of the present lawsuit; and (3) whether the client might have disclosed a confidence to [his or] her attorney in the prior representation which could be relevant to the present action.

*Doe ex rel. Doe v. Perry Cmty. Sch. Dist.*, 650 N.W.2d 594, 598 (Iowa 2002).

Under the first factor, we must consider the scope—if any—of Stoller's representation of the Zylstras in regard to the manure easement agreements. There is no question that Stoller and Robert met to discuss

the agreements and that Stoller was aware the Zylstras intended to enter into the agreements with NuStar. During the meeting, Robert showed Stoller the easement agreements. Stoller acknowledges that he looked at the first page and made some notations, though he contends the notations were made at Robert's request so Robert would know what he needed to discuss with another attorney. Stoller further claims that he did not read the entirety of the agreements. During the meeting, Stoller advised Robert to find another attorney to help him with the agreements because it was not an area of the law Stoller was familiar with. He gave Robert the names of two attorneys to contact.

Stoller sent an email to Robert following the meeting that summarized their discussion about the easement agreements. The email stated that Robert asked Stoller to look at the easements and that he "briefly looked at them." Stoller also wrote, "The changes you were talking about should be run by [the other attorney] and I suggest that if approved they be included in the easements. I would also think that some permit would be necessary." This reflects at least some level of advice given to Robert by Stoller. However, this is in stark contrast to our previous cases where we have found an attorney was extensively involved in prior representation.

In *Doe*, we found an attorney was highly involved in a client's prior representation when he had met with the clients, had telephone conversations with the clients, appeared as their attorney, and signed pleadings on their behalf. 650 N.W.2d at 599. In *Marks*, we found that the attorney violated rule 32:1.9(a) when he represented a client in a foreclosure action and later represented his own wife in the sale of property to that same former client. 814 N.W.2d at 539. We found that the attorney's representation of the client and his wife were substantially

related because he had obtained information about the client's property during the foreclosure action. *Id.* In comparison to our prior cases, we cannot say that the scope of Stoller's representation of the Zylstras regarding the manure easement agreements was in any way significant.

The second factor we consider is the nature of the present lawsuit between the Zylstras and NuStar. *See Doe*, 650 N.W.2d at 598. In the original petition that Stoller filed on behalf of NuStar, he included six counts. All of the counts except one deal with a real estate contract between NuStar and the Zylstras. Stoller did not participate in the real estate contract on behalf of the Zylstras. Count IV alleges a breach of the manure easement agreements between NuStar and the Zylstras. Although the majority of the counts do not relate to the manure easement agreements that Stoller had knowledge of, at least one part of the current lawsuit does relate to the prior scope of Stoller's representation.

The final factor we consider is "whether the client might have disclosed a confidence to [his or] her attorney in the prior representation which could be relevant to the present action." *Id.* The meeting between Robert and Stoller to discuss the manure easement agreements was brief. The parties only superficially discussed the substance of the agreements and Stoller specifically suggested that Robert seek other competent agricultural law counsel to review the agreements before signing them. The email from Stoller does note that the two discussed whether permits were required or whether Robert should change anything in the agreements. However, nothing from this meeting indicates that Robert disclosed anything in confidence about the agreements to Stoller that would affect the current lawsuit between the Zylstras and NuStar.

We do not find that a substantial relationship exists sufficient to disqualify Stoller under rule 32:1.9(a). We therefore find that the district court did not abuse its discretion in holding that Stoller could not be disqualified under the substantial relationship test.

## IV. Conclusion.

We find that the district court did not abuse its discretion in concluding that any prior relationship between Stoller and Zylstra in regard to the manure easement agreements failed the substantial relationship test. However, we find that Stoller did have a concurrent conflict of interest. Therefore, we conclude that the district court abused its discretion in not disqualifying Stoller from representing NuStar in the action. On remand, the district court should enter an order disqualifying Stoller from further representation of NuStar in this lawsuit.

**DISTRICT COURT JUDGMENT REVERSED AND CASE REMANDED.**